Larry Carl **REYNOLDS**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 14–96–00567–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 19, 1998.

W. Troy McKinney, Houston, for appellant.

Carmen C, Mitchell, Houston, for appellee,

Before YATES, AMIDEI and FOWLER, JJ.

## OPINION

AMIDEI, Justice.

Larry Carl Reynolds appeals from his conviction of possession of cocaine in an amount of less than 28 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.115[1]. After his motion to suppress evidence was denied, appellant pleaded guilty to the charge and the trial court sentenced him to five years imprisonment. This court dismissed his direct appeal for want of jurisdiction. *Reynolds v. State*, No. B14–93–01040–CR (Tex.App.—Houston [14th Dist.], March 16, 1995, no pet.) (not designated for publication). Upon appellant's post-conviction application for writ of habeas corpus, the court of criminal appeals granted appellant an out-of-time appeal. *Ex Parte Larry Carl Reynolds*, No. 72, 297 (Tex. Crim.App., March 20, 1996) (not designated for publication). In two points of error, appellant contends the trial court erred in failing to suppress all fruits of his arrest because the State failed to prove reasonable suspicion or probable cause for appellant's

initial stop in violation of the Texas and United States Constitutions. We affirm.

On May 7, 1993, at about 6:30 p.m., Officer Carl Dyess received a call from an unidentified person (informant) who asked for Officer Dyess by name. The informant told Officer Dyess there was a black male in a green Buick with a rag top selling crack cocaine in the area of Goodhope and Rebecca streets. Officer Dyess testified this area was known for narcotics and prostitution. The informant also told Dyess he watched the guy sell about an ounce of cocaine to someone, he had some more in his car, and the guy was carrying a pistol. Dyess gave the informant his beeper number and told him to call if he had more information. Dyess and Officer Wood then went to Goodhope and Rebecca but did not see the green Buick convertible. In response to a call on his beeper at that location, Dyess called the informant and set up an in-person meeting. Dyess and Officer Wood met with the informant and Dyess told the informant: "I know you from somewhere." The informant told Dyess: "That's right, you do. You put my daddy in jail." The informant would *not* give Dyess his name but did give him his telephone number. The informant then told the officers the driver was Larry Reynolds and gave the officers the license plate number of the green Buick convertible. The informant then told the officers that appellant was on his way "right now," or "soon," to Rebecca and Goodhope to sell cocaine. The officers then returned to Rebecca and Goodhope but did not find the green Buick at the location. The officers then determined the license plate number was registered to Larry Reynolds, 3405 Goodhope. The officers drove to 3405 Goodhope and observed a green Buick convertible parked there with the same license plate number furnished by the informant. A black male then came out of the house, got in the green Buick convertible, and drove off. Dyess radioed patrol units and reported the Buick's departure and direction of travel. Dyess and Wood then drove around the block, observed the car stopped at a stop sign, drove by the Buick convertible, and

parked their unmarked car a short distance away. Dyess got out of the car and walked towards the Buick. At this time, marked police cars had stopped on the other side of the intersection and police officers were getting out of their cars. The record is unclear as to the number of marked cars, and whether the marked cars were blocking the intersection or merely parked. Dyess was wearing a raid jacket and plain clothes. Dyess stated appellant was looking at the marked patrol cars as Dyess approached the Buick on foot. Dyess testified the convertible top was down and he then saw appellant stuff a pistol between the front seats of the convertible. Dyess then drew his pistol, told appellant to get out, and placed appellant under arrest. The officers then searched the car and found cocaine in a compartment in the console of the convertible.

In points of error one and two, appellant contends the trial court erred in denying his motion to suppress because the officers did not have reasonable suspicion or probable cause to stop appellant. Because the informant's tip was not corroborated by the police, appellant contends his seizure was invalid under the Texas and United States Constitutions and, therefore, all evidence acquired after his arrest was inadmissible.

### Standard of Review

In *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997), the court of criminal appeals expressly overruled *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim.App. 1996); *State v. Carter*, 915 S.W.2d 501 (Tex. Crim.App.1996); and *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992). *Id.* at 90. The *Guzman* court established a new standard of review for appellate courts, as follows:

[A]s a general rule, the appellate courts ... should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor [citation omitted]. The appel-

---

**1.** The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised Health and Safety Code. *See* Acts 1993, 73 rd Leg., ch. 900, Sec.

2.02. Therefore, all references to the Health and Safety Code are to the code in effect at the time the crime was committed.

late courts ... should afford the same amount of deference to trial court rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category.

*Id.* at 89.

■ If the issue to be determined on appeal is whether the officer had probable cause to seize a suspect, under the totality of the circumstances, "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Id.* at 87. Officer Dyess was the only witness to testify at appellant's hearing on his motion to suppress. Appellant does not dispute the historical facts, as determined at his hearing, but disputes the determination by the trial court applying the law to the facts. Appellant argues that the officers did not sufficiently corroborate the details of the informant's tip with respect to any criminal activity that would justify a stop. Because the issue in this case does not involve the credibility of a witness, but involves whether the officer had probable cause to seize appellant, under the totality of the circumstances, we review the "mixed question of law and fact" *de novo*, affording total deference to the trial court's determination of the historical facts. *Id.* at 87—89.

## De Novo Review

■ **1. The investigative detention.** Appellant contends the stop by Officer Dyess was not based on reasonable suspicion because the information given by the unidentified informant was not proven reliable. Appellant argues the police did not have any additional factors confirming the substance of the criminal activity in the informant's tip and, therefore, probable cause to stop him did not exist. Appellant cites *Rojas v. State,* 797 S.W.2d 41, 43–44 (Tex.Crim.App.1990) as authority for his contention.

*Rojas* involved a telephone call from an anonymous male caller who stated he was advised that a vehicle belonging to appellant, and which might be driven by him, contained a quantity of marijuana in the trunk. The caller described the vehicle as a 1982 Lincoln, maroon over black with roses on the windows, and unicorns etched in the back glass and windshield. The caller also said that the vehicle would be at a certain church for a funeral and then would be going to a certain cemetery for graveside services. *Id.* at 42. In *Rojas,* the information was secondhand when received by the informer, and there was no evidence that the informer ever asserted that he had any personal knowledge whatsoever of contraband. *Id.* at 44. Accordingly, the court of criminal appeals held:

> We thus hold that in order to satisfy the totality of the circumstances test, when an anonymous tip is relied upon to furnish probable cause, the informer must assert personal knowledge or there must be additional facts showing reason to believe that the contraband sought will probably be where the information indicates it will be.

*Id.* at 44.

This is not the situation here. The information from the informant in this case was that he "watched the guy sell about an ounce of cocaine to someone," he had more in the car, and the "guy was carrying a pistol." The informant thus asserted personal knowledge that three crimes were committed (sale of cocaine, possession of cocaine, and unlawfully carrying a pistol). *Rojas* would not apply to the facts in this case because the informant "asserted personal knowledge" of criminal activity. *Id.* at 44.

The State argues there was no "investigative stop" and appellant was not detained in any manner by the officers until appellant stuffed the pistol between the seats. The State cites *Stewart v. State,* 603 S.W.2d 861, 862 (Tex.Crim.App.1980) and *Merideth v. State,* 603 S.W.2d 872, 873 (Tex.Crim.App. 1980) as authority for its contention. *Stewart* involved officers approaching a van parked at the end of a street. They smelled marijuana emanating from the van, the driver consented to a search of the van, and the officers found marijuana. *Id.* at 862. The *Stewart* court found the officers did not "seize" appellant because the van was already stopped and appellant got out of the van without being requested to do so and, therefore, the officers did not restrain his freedom to walk away. *Id. Stewart* was a

similar case in which the officers received a radio call to investigate the appearance of several people around some parked cars in an apartment complex. The officer observed appellant and a female sitting in a pickup truck. The officer stepped out of his vehicle and approached the pickup on foot. He was unable to see through the rear window so he went up to the door on the driver's side and knocked on the window. The appellant opened the door and the officer smelled marijuana. The officer shined his flashlight in the car and observed a handrolled cigarette in the ashtray. He then arrested appellant, impounded the truck, and found a plastic baggie containing marijuana. The *Merideth* court found there was no "investigative stop" because appellant had not been detained until the marijuana was found. *Id.* at 873.

The facts in this case are similar to the facts in *Stewart* and *Merideth*, except the marked patrol units stopped in front of appellant while he was stopped at the stop sign. The record is not clear as to exactly where the marked patrol units stopped and whether the officers were completely out of the car and moving towards appellant. Even if appellant did not see Officer Dyess approaching him, it is unclear if appellant hid the pistol because he saw the other officers. However, whatever the reasons for appellant's hiding the pistol and remaining stopped at the stop sign, Officer Dyess testified the top to the convertible was down, appellant did have a pistol, and he stuffed the pistol between the seats.

In *Johnson v. State*, 912 S.W.2d 227, 232–35 (Tex.Crim.App.1995), the court of criminal appeals, in interpreting article I, section 9 of the Texas Constitution, adopted the *Hodari, D.* test in case of either an investigative detention or arrest. *Id. California v. Hodari, D.* determined that a person is seized for the purposes of the Fourth Amendment only if a reasonable person would not believe he or she was free to leave, and (1) the defendant is subjected to a show of authority and he or she yields, or (2) physical force is used to limit movement. *California v. Hodari, D.,* 499 U.S. 621, 622—30, 111 S.Ct. 1547, 1549–52, 113 L.Ed.2d 690 (1991); *Johnson,* 912 S.W.2d at 232–35. We are unable to determine from the record if the facts of this case would constitute an actual "show of

authority" by the police and whether appellant had actually yielded to their authority.

Assuming *arguendo* the appellant yielded to a show of authority and was seized for the purposes of the Fourth Amendment and article I, section 9 of the Texas Constitution, did the officers have reasonable suspicion or probable cause to stop appellant? Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio,* 392 U.S. 1, 21—22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *State v. Sailo,* 910 S.W.2d 184, 187 (Tex. App.—Fort Worth 1995, pet. ref'd). To justify the intrusion, the officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex. Crim.App.1983). The officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication the activity is related to a crime. *Id.*

The reasonableness of an investigative detention turns on the totality of the circumstances in each case. *United States v. Mendenhall,* 446 U.S. 544, 561—62, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980); *Sailo,* 910 S.W.2d at 188. Reasonable suspicion is dependent upon both the content of the information possessed by the police and its degree of reliability. *Alabama v. White,* 496 U.S. 325, 329—31, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990); *Hankins,* 920 S.W.2d at 188. Both factors—quantity and quality—are considered in the "totality of the circumstances." *Id.*

A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention. *Sailo,* 910 S.W.2d at 188. There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *Id.*

This case is factually similar to *Sailo,* in that the informant, although unknown to the officers, was found sufficiently reliable because he came forward in person to give the

officers the information. *Sailo,* 910 S.W.2d at 186–88. In *Sailo,* the officers made a traffic stop of an automobile and an unnamed citizen drove up and shouted at the officers. *Id.* at 186. Officer Andrews crossed the roadway and the citizen told the officer he had seen a possible drunk driver who was approaching the scene. The citizen told the officer he had observed the vehicle driving erratically and the suspect was driving a small, white Toyota pickup truck and was approaching from behind him. Officer Andrews next observed a vehicle approach that matched the description given by the citizen-informant and both officers testified they had not seen the Toyota commit any traffic violations. The officer asked the Toyota's driver to pull over into a parking area so he could investigate. The officer testified that, as he approached the Toyota, he noted an extremely strong odor of alcoholic beverage from the vehicle and observed, in plain view, several beer cans. The defendant was asked to exit the car and the officer noted he was unsteady on his feet and had extremely bloodshot eyes. The defendant was arrested for DWI after failing field sobriety tests. The informant left before the officers could get any identifying information. *Id.* at 186–87. As in *Sailo,* we hold that the informant in this case was sufficiently reliable because he came forward in person to give the officers the information.

The *Sailo* court further found that corroboration by the police officer means, in light of the circumstances, he confirms enough facts so that he may reasonably conclude that the information provided is reliable and a detention is justified. *Sailo,* 910 S.W.2d at 189. Therefore, in the present case, the question becomes whether, in the totality of the circumstances and in the light of his experience and knowledge, Officer Dyess observed (corroborated) enough of the information from the informant, giving the information the weight it deserved in light of its indicia of reliability. If so, an investigative stop of appellant was justified.

The informant furnished Officer Dyess: (1) the description of appellant's car as a green Buick convertible; (2) the license plate number; (3) the appellant's name, Larry Reynolds; (4) the fact that he had observed appellant sell cocaine to someone; (5) the fact that he observed appellant in possession of a pistol and cocaine in his car; (6) appellant's description as a black male; and (7) information that appellant was going to sell cocaine at the intersection of Rebecca and Goodhope "right now" or "soon." Officer Dyess corroborated the following details furnished by the informant: (1) the car driven by appellant was a green Buick convertible; (2) the license plate number furnished by the informant matched the one on the Buick; (3) the license plate was in the name of Larry Reynolds; and (4) the car was being driven by a black male.

Having the license plate number furnished by the informant, Officer Dyess determined Reynolds lived at 3405 Goodhope, two blocks west of the intersection of Rebecca and Goodhope. Officer Dyess and Officer Wood drove to 3405 Goodhope and observed a black male leave the residence at 3405 Goodhope, get in the green Buick convertible, and drive away. Officer Dyess testified appellant was driving towards the intersection of Rebecca and Goodhope when appellant stopped at the stop sign. Officer Dyess testified that Rebecca and Goodhope was in an area known for traffic in narcotics and prostitution. Officer Dyess testified that when appellant stopped his car, he did not signal for a turn at the intersection. Appellant's failure to signal indicated to Officer Dyess that appellant was going to continue straight ahead towards Rebecca and Goodhope "to make a delivery." Based on the information furnished by the informant together with other information he gathered, Officer Dyess stated: "I believed that someone was committing an offense and I wanted to look into it." Appellant was arrested on May 7, 1993, the same date the informant called Dyess, but the exact time of appellant's arrest is not in the record. The informant called Officer Dyess at the police station at 6:30 p.m., May 7, 1993. Officer Dyess testified appellant's departure towards Rebecca and Goodhope was within the timeframe designated by the informant for the delivery of cocaine at that location (the informant indicated appellant was going to sell cocaine at the location "right now" or "soon").

As in *Alabama v. White,* the informant in this case demonstrated his ability to predict

appellant's *future behavior.* *White,* 496 U.S. at 331–32, 110 S.Ct. at 2417. The general public in *White* had no way of knowing "that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel." *Id.* "Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.* In this case, the informant told Officer Dyess that appellant was going to Rebecca and Goodhope to sell cocaine. Appellant was headed towards the location when he stopped at the stop sign. All of this occurred within the general timeframe predicted by the informant. Under the totality of the circumstances, in the light of the experience and knowledge of Officer Dyess (police officer for fourteen years), and giving the informant's information the weight it deserves in light of its indicia of reliability, we hold that Officer Dyess did corroborate enough facts to justify an investigative stop of appellant.

**2. The arrest.** Having determined the officers had reasonable suspicion to make an investigative stop, we now hold that when Officer Dyess observed appellant stuffing a pistol between the seats of his convertible, Officer Dyess had probable cause to arrest appellant for unlawfully carrying a weapon. TEX.PENAL CODE ANN. § 46.02 (Vernon 1974); *Razo v. State,* 577 S.W.2d 709, 711 (Tex. Crim.App.1979).

**3. The search.** Because Officer Dyess had probable cause to arrest appellant for unlawfully carrying a weapon, he had the right to search his vehicle for the cocaine. *Rogers v. State,* 774 S.W.2d 247, 264 (Tex. Crim.App.1989).

The investigative stop did not violate appellant's rights under the Fourth Amendment or article I, section 9 of the Texas Constitution. Appellant's points of error one and two are overruled and the judgment of the trial court is affirmed.