**Roxanna Marie BLEVINS, Appellant,**

v.

**The STATE of Texas.**

**No. 2–01–115–CR.**

Court of Appeals of Texas,
Fort Worth.

April 11, 2002.

Rehearing Overruled May 23, 2002.

John F. Curry, Wichita Falls, for Appellant.

Barry L. Macha, Crim. Dist. Atty., John W. Brasher, Gregory J. King, Asst. Crim. Dist. Attys., Wichita Falls, for Appellee.

PANEL B: DAY, DAUPHINOT, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

A jury convicted Appellant Roxanna Marie Blevins ("Blevins") of possession of between one and four grams of methamphetamine and assessed her punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $500 fine. In two issues on appeal, Blevins asserts that the trial court erred in denying her motion to suppress and that the fine assessed by the jury was not authorized by law. We will reform the trial court's judgment to delete the fine and affirm the judgment as reformed.

### II. BACKGROUND FACTS

On December 22, 1999, Wichita Falls Police Officer Charles Eipper was with the tactical unit of the department and was engaged in a surveillance operation. Officer Eipper testified that he had been informed by an informant that two suspects, named Darren Woodall and Gidget Dotson, had stolen credit cards, that one of the credit cards had been stolen from the library, and that the two were using those credit cards to stay in the Roadway Inn and to purchase merchandise. The informant told Officer Eipper that the suspects

had used the stolen credit cards to purchase a scanner from the Radio Shack at Sike's Senter Mall and also to purchase an expensive gold necklace from Sloan's Loans. Officer Eipper went to the Roadway Inn and confirmed that Woodall and Dotson had stayed there and paid with a credit card bearing the name of Deanne York. Because at that time Officer Eipper possessed no confirming evidence that the "Deanne York" credit card had been stolen, he took no further action.

The next day, on December 23, 1999, Officer Eipper discovered Deanne York had reported that her credit card was stolen from her at the library. On December 24, 1999, Officer Eipper found out from the same informant that Woodall and Dotson had moved, and were now staying at the River Oaks Motel in Room 209. At that point, Officer Eipper, along with Officers Miracle, Haldane, Gossett and Stout, set up surveillance at the River Oaks Motel. Officer Eipper was in a marked patrol car, while the other officers were in unmarked cars.

During the December 24, 1999 surveillance, at about 10:00 a.m., the officers observed Woodall exit the hotel room carrying a box and get into a blue Chevy Caprice driven by a man the officers knew to be Barry Hatton. The officers followed them. Woodall and Hatton first drove to the Paramount Store, a place known by police to be "a place where people do go and fence property and take stolen property to sell." The Paramount Store was closed, so Woodall and Hatton went to Lovett's. Woodall carried the box into Lovett's, and then exited a minute later still carrying the box. Officer Eipper entered Lovett's, while his partners maintained surveillance, and discovered that Woodall was attempting to sell a scanner for $150.

The officers followed Woodall and Hatton from Lovett's to the Frosty Mug. Again, Officer Eipper went into the Frosty Mug after Woodall left, while his partners continued to follow Woodall and Hatton. Employees at the Frosty Mug indicated to Officer Eipper that Woodall was attempting to sell a scanner for $150. Woodall and Hatton proceeded to the Hubcap Club. Again, after Woodall left, Officer Eipper entered the establishment. Patrons sitting at the bar in the Hubcap Club told Officer Eipper that Woodall had been trying to sell a scanner for $150. Woodall and Hatton then traveled to the Lonesome Dove, the Missle Club, Surles Pawn Shop, and finally back to the River Oaks Motel. Woodall still possessed the box when he left Surles Pawn Shop.

At approximately 11:00 a.m., Woodall, Hatton, and Dotson left the motel in the blue Chevy Caprice. Officers followed them to the Just Country Bar and later to an address in a trailer park, 102 Lindsey. Woodall, Hatton, and Dotson all went inside 102 Lindsey. At approximately 12:30 p.m., Woodall and Dotson exited 102 Lindsey and were picked up by two unidentified white females in a gold Mercury Sable. At this point, after a half-day of surveillance, the officers decided they should stop the Mercury and "try to locate the scanner and the stolen credit cards." Officer Eipper testified that he possessed reasonable suspicion that Woodall and Dotson, who were in the Mercury, had committed a crime and were in possession of stolen property.

After the stop, Dotson admitted to possessing the stolen credit cards and informed Officer Eipper that the scanner had been sold to Blevins, the driver of the Mercury. A warrant check revealed that a warrant was outstanding for one of the white females, Ms. Morgan. According to Morgan's testimony, while she and Blevins

were still in the Mercury, Blevins handed her a small plastic baggie. Apparently, Blevins was aware that a warrant was also outstanding for her arrest and did not want to be linked to the baggie. Once Morgan realized she was being arrested, she slipped the baggie back to Blevins.

Officer Gossett testified that as he was trying to place handcuffs on Morgan, he saw an "exchange" between Morgan and Blevins. Officer Gossett said Morgan leaned forward and handed something to Blevins. He saw something rolled up in plastic in Blevins's hand and saw her put her hand into her front jeans pocket. Officer Gossett then saw Blevins open the back door of the Mercury, put her hand in her front jeans pocket, and then push something "all the way down in between the seat." Officer Gossett went to the car and pushed down on the back seat cushion to expose whatever was wedged between the cushion and the seat back, and he discovered a "little plastic baggie." The substance in the baggie was later tested and determined to be methamphetamine.

### III. Scope of Review

 In determining whether a trial court's decision on a motion to suppress is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996). However, this general rule is inapplicable where the suppression issue has been consensually relitigated by the parties during trial on the merits. *Id.* Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of relevant

trial testimony is also appropriate in our review. *Id.*

Here, the record reflects that the parties relitigated the suppression issue at trial. Accordingly, we review the testimony presented at the suppression hearing and at trial in addressing Blevins's first issue.

### IV. Standard of Review

 The appropriate standard of review for a suppression ruling is a bifurcated review. *Bachick v. State*, 30 S.W.3d 549, 551 (Tex.App.-Fort Worth 2000, pet. ref'd). First, we afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000) (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim.App.1997)); *Bachick*, 30 S.W.3d at 551. We also afford such deference to a trial court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 88–89. Next, we review de novo the trial court's application of the law of search and seizure to the facts. *Ross*, 32 S.W.3d at 856.

### V. Reasonable Suspicion Justifying the Initial Stop

In her first issue, Blevins asserts that the trial court improperly denied her motion to suppress because the officers' initial stop of the gold Mercury Sable violated the Fourth Amendment. Blevins argues that the officers did not possess a reasonable articulable suspicion that criminal activity was afoot justifying the initial *Terry* stop of the automobile. Blevins also complains that the stop was based on a tip by an anonymous informant of undisclosed reliability and claims

that this type of information does not establish the requisite level of suspicion necessary to justify an investigative stop. Blevins relies upon *Florida v. J.L.*, 529 U.S. 266, 269, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000).

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The same standards apply whether the person detained is a pedestrian or is the occupant of an automobile. *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App.2000) (citing *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972)) (holding that the "warrantless stop of the Camry was constitutionally justified based upon the informant's tip."); *Rhodes v. State*, 913 S.W.2d 242, 246 (Tex.App.-Fort Worth 1995) (recognizing "[a]n occupant of an automobile is just as suspect to an investigative detention as is a pedestrian"), *aff'd*, 945 S.W.2d 115 (Tex.Crim.App.), *cert. denied*, 522 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997). To initiate an investigative stop, the investigating officer must possess a reasonable suspicion based on specific articulable facts that, in light of the officer's experience and general knowledge, would lead the officer to the reasonable conclusion that criminal activity is underway and the detained person is connected to the activity. *See, e.g., King v. State*, 35 S.W.3d 740, 743 (Tex.App.-Houston [1st Dist.] 2000, no pet.). These facts must amount to more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997).

Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by the police and its degree of reliability. *Ala-*

*bama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). So in examining the totality of the circumstances, the quantity and the quality of the information available to the police are considered. *Id.; State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1995, pet. ref'd). Under this comprehensive, totality-of-the-circumstances approach, the quality of the information possessed is weighed against the quantity of information possessed. *See Rojas v. State*, 797 S.W.2d 41, 43 (Tex.Crim.App.1990) (balancing quality of information against quantity of information in the probable cause context). That is, a weakness in the quality of the information possessed may be overcome by the requisite quantity of corroborating facts demonstrating the reliability of the information. *Smith v. State*, 58 S.W.3d 784, 790 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (balancing quality of information against quantity of information in the investigative stop context). Conversely, where the reliability of the information is increased, less corroboration is necessary. *Sailo*, 910 S.W.2d at 188 (citing *White*, 496 U.S. at 330, 110 S.Ct. at 2416); *State v. Stolte*, 991 S.W.2d 336, 341 (Tex.App.-Fort Worth 1999, no pet.).

The information obtained by police falls into four general categories: information gleaned from first-hand observation by the officer; information obtained from a confidential informant; information provided by a concerned citizen reporting a possible crime in progress or of recent origin; or information provided by an anonymous tipster. *Sailo*, 910 S.W.2d at 188 (citing *White*, 496 U.S. at 330, 110 S.Ct. at 2416); *Stolte*, 991 S.W.2d at 341. Information observed first-hand by a police officer is highly reliable and, consequently, the investigative stop Fourth Amendment analysis in cases involving first-hand police observation focuses not on reliability, but on

whether the information gives rise to a reasonable articulable suspicion. *See, e.g., Terry*, 392 U.S. at 22, 88 S.Ct. at 1880 (holding personally observed criminal activity creates articulable facts that give rise to reasonable suspicion).

■ Anonymous tips fall at the opposite end of the reliability spectrum. Thus, balancing the quality of the information against the quantity of information, a tip by an anonymous informant of undisclosed reliability standing alone rarely will establish the requisite level of suspicion necessary to justify an investigative stop. *J.L.*, 529 U.S. at 269, 120 S.Ct. at 1378; *see also State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.-Austin 2001, no pet.); *Sailo*, 910 S.W.2d at 188. There must be some further indicia of reliability or some additional facts from which a police officer may reasonably conclude that an investigative stop is justified. *J.L.*, 529 U.S. at 269, 120 S.Ct. at 1378; *see also Guevara v. State*, 6 S.W.3d 759, 763–64 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (holding tip from anonymous caller predicting defendant's arrival at unusual location sufficiently reliable to justify investigative stop to maintain status quo and acquire additional information); *Sailo*, 910 S.W.2d at 189 (holding officer may rely on information received through an informant, so long as the informants' statement is reasonably corroborated by other matters within the officer's knowledge).

■ Our focus, therefore, is on the quantity and quality of information known to Officer Eipper at the time of the stop. After receiving information from the informant, Officer Eipper independently confirmed that Woodall and Dotson used the Deanne York credit card to pay for their motel room. He later independently confirmed that Deanne York had reported to police that her credit card had been stolen from the library, the place the informant indicated it had been stolen from. Officer Eipper then received additional information from the same informant that Woodall and Dotson had moved to the River Oaks Motel in Room 209. He independently confirmed this information. He also independently confirmed that Woodall was attempting to sell a scanner, one of the items the informant said had been purchased with the stolen credit cards. Therefore, Officer Eipper corroborated the information provided by the informant sufficiently to confirm the reliability and accuracy of the information. We hold that based on the totality of the circumstances, Officer Eipper possessed reliable information and articulable facts to reasonably suspect criminal activity, i.e., the use of stolen credit cards to purchase merchandise, thereby justifying the initial *Terry* stop of the gold Mercury Sable occupied by Woodall. *See White*, 496 U.S. at 330, 110 S.Ct. at 2416; *Guevara*, 6 S.W.3d at 763–64; *Reynolds v. State*, 962 S.W.2d 307, 313 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (all holding investigative detention justified after corroboration of facts provided by informant).

The present facts are distinguishable from the uncorroboratable anonymous tipster cases, including *Florida v. J.L.* relied upon by Blevins. *See* 529 U.S. at 269, 120 S.Ct. at 1378. In *Florida v. J.L.*, the police responded to an anonymous tip that a young, black man standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *Id.* at 268, 120 S.Ct. at 1377. Sometime after police received the tip—the record did not say how long—two officers were instructed to respond. *Id.* They arrived at the bus stop about six minutes later and saw a black male in a plaid shirt, whom they stopped and frisked, finding a gun. *Id.* The court held that the officers lacked reasonable suspicion to stop the young black man because

"[t]he anonymous call concerning J.L. *provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility.*" *Id.* at 271, 120 S.Ct. at 1379 (emphasis added); *see also Stewart v. State,* 22 S.W.3d 646, 648 (Tex.App.-Austin 2000, pet. ref'd) (anonymous phone call reporting drunk driver at gas station in green Camaro did not justify investigative detention). Here, Officer Eipper confirmed the informant's knowledge and reliability over a several-day period through investigation and surveillance. All of the information provided by the informant was verifiably accurate. Accordingly, the cases involving a single call from an anonymous informant providing no verifiable details regarding the allegedly illegal conduct, such as *J.L.* and *Stewart,* are not applicable.

▬▬▬ The dissent focuses not on the validity of the initial stop, which is the issue raised by Blevins on appeal, but on whether Officer Eipper should have obtained a warrant to search the car driven by Blevins. Officer Eipper testified that one of the purposes of the investigative stop was to "try to locate the scanner and the stolen credit cards," i.e., evidence of a crime. A warrantless search of an automobile is justified any time an officer possesses probable cause, as Officer Eipper did, to believe the automobile contains evidence of a crime. *See Powell v. State,* 898 S.W.2d 821, 827 (Tex.Crim.App.1994), *cert. denied,* 516 U.S. 991, 116 S.Ct. 524, 133 L.Ed.2d 431 (1995). Moreover, the Texas Court of Criminal Appeals has expressly overruled all cases requiring "exigent circumstances" as a prerequisite to a warrantless search of an automobile so long as probable cause exists to believe the automobile contains evidence of a crime. *State v. Guzman,* 959 S.W.2d 631, 634 (Tex. Crim.App.1998) (citing *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83

L.Ed.2d 890 (1985); *Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984); *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982)). Therefore, even if the issue before us were framed as a warrantless search of Blevins's car, rather than as a *Terry* stop of Woodall and Dotson, who happened to be in Blevins's vehicle, we would affirm the trial court's denial of Blevins's motion to suppress. We overrule Blevins's first issue.

## VI. UNAUTHORIZED FINE

In her second issue, Blevins complains that because her indictment alleged, and the jury found true, two enhancement allegations, her punishment for the instant offense fell under penal code section 12.42(d). That statute authorizes the assessment of a sentence of imprisonment between twenty-five and ninety-nine years. TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp.2002). She points out that the applicable punishment does not include imposition of a fine. The State agrees with Blevins's position on this issue and joins in her request that we reform the judgment to delete the fine. Therefore, we sustain Blevins's second issue. We reform the judgment to delete the $500 fine. *See Ex parte Youngblood,* 698 S.W.2d 671, 672 (Tex.Crim.App.1985) (reforming judgment to delete unauthorized fine); *Jenkins v. State,* 870 S.W.2d 626, 631 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd), *cert. denied,* 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996) (same).

## VII. CONCLUSION

Having disposed of both Blevins's issues, we reform the trial court's judgment to delete the fine and affirm the trial court's judgment as reformed.

LEE ANN DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I respectfully dissent to the majority's thoughtful opinion holding that *Terry v. Ohio*[1] permits a police officer to ignore the clear mandate of the Fourth Amendment to the United States Constitution, which guaranteed Appellant the right to be free from unreasonable detention and search.[2]

The majority appears to conclude that *Terry* supercedes the Fourth Amendment warrant requirement. I would point out that *Terry* dealt primarily with the lawfulness of a pat-down search for weapons while the officer talked to a person on the street.[3] The *Terry* court specifically refused to "retreat from [its] holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through a warrant procedure ... or that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances."[4]

To justify the unlawful detention of Appellant, the majority relies on the following authority:

- a case in which an automobile was lawfully in police custody when searched,[5]
- a case in which a defendant consented to the search of his vehicle after a lawful stop,[6] and
- a case in which there was a search warrant for a parked mobile home involving no stop.[7]

No case cited by the majority deals with the controlling issue before us, which is the validity of the stop of Appellant's automobile for the purpose of satisfying the officer's curiosity regarding the presence or absence of the credit card or any items purchased with it.

Specifically, the officer in this case had developed probable cause over a three-day period to arrest and search two passengers in a vehicle, but made no attempt to secure either a search warrant or an arrest warrant. We are asked to review whether the officer's action in stopping the vehicle infringed on the driver's Fourth Amendment right to be free from unreasonable search and seizure when the officer: (1) seized the driver; (2) with no evidence or reasonable suspicion of wrongdoing on the part of the driver or that the driver was a potential witness to wrongdoing; (3) when the officer had ample opportunity to secure a warrant or to detain the passengers on the street, in their own vehicle, at their motel, and in various retail establishments; and (4) the only stated purpose for detaining the driver was to determine whether the passengers still had the property obtained with the stolen credit card.

1. 392 U.S. 1, 88 S.Ct. at 1868, 20 L.Ed.2d 889 (1968).

2. U.S. CONST. amend. IV.

3. 392 U.S. at 29–30, 88 S.Ct. at 1884–85.

4. *Id.* at 20, 88 S.Ct. at 1879 (citations omitted).

5. *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985) (holding "[a] vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search").

6. *State v. Guzman*, 959 S.W.2d 631, 632, 634 (Tex.Crim.App.1998) (holding automobile exception to Fourth Amendment does not require exigent circumstances in addition to probable cause).

7. *Powell v. State*, 898 S.W.2d 821, 826–27 (Tex.Crim.App.1994) (holding even if search warrant was invalid, search of parked motor home was nevertheless justified by automobile exception to warrant requirement).

Officer Eipper did not testify that he observed Appellant commit a traffic violation. His only justification for stopping the car driven by Appellant was to search the vehicle and "try to locate the scanner and the stolen credit cards;" that is, to see whether Woodall and Dotson, passengers in the vehicle, still had the property. Moreover, Officer Eipper did not suggest that he feared the scanner and credit cards would be destroyed or that Woodall and Dotson would flee. In short, Officer Eipper proffered no exigent circumstances necessitating an immediate detention and search of the vehicle and its occupants. Indeed, Officer Eipper had verified the informant's tip—the theft of the credit card by Woodall and Dotson, their use of the stolen credit card to pay for a motel room, the motel where Woodall and Dotson were presently staying, and Woodall's attempts to sell the scanner. Clearly, Officer Eipper had probable cause to justify obtaining both a search warrant and an arrest warrant for Woodall and Dotson. He made no attempt to do so.

The record shows that this was not a case in which the officer approached Appellant on the sidewalk or in an airport where she was free to walk away, not a case in which the automobile was lawfully in police custody, not a case in which the defendant consented to the search after a lawful stop for a traffic violation, and not a case in which there was a search of the vehicle but no stop. Rather, this case involved a full detention of Appellant, where Officer Eipper pulled over Appellant's car and ordered her to get out of the vehicle. Nor is this a case in which the officer observed suspicious activity that re-quired him to investigate, either for his own or the public's safety or to maintain the status quo at the scene to determine whether illegal activity was occurring or had recently occurred. Nothing in the record suggests that Appellant was involved in the criminal activity for which Officer Eipper was investigating Woodall and Dotson.

Although the Fourth Amendment is commonly thought of as a limitation on the power of police to search for and seize evidence, instrumentalities, and fruits of crime, it also preserves the "right of the people to be secure in their persons."[8] Any "unreasonable seizure of the person is itself a violation of the Fourth Amendment."[9]

The well-established rule is that a warrantless search is per se unreasonable unless it falls within a recognized exception to the warrant requirement. This rule has not been abrogated by the federal courts. While the Fourth Amendment still appears to require exigent circumstances to justify a warrantless search, police officers may not create the exigent circumstances in order to circumvent the warrant requirement if the officers had the opportunity to secure a warrant before the exigency was created.[10] "[I]n cases where police did not avail themselves of an earlier opportunity to get a warrant, this has been a dominant factor in the holdings that there were not exigent circumstances."[11]

We note that Officer Eipper did not stop Appellant's car because he saw a traffic violation or some other offense, nor in order to learn whether criminal activity was afoot or to arrest Woodall and Dotson. Rather, he stopped Appellant's vehicle for

---

**8.** 3 Wayne R. LaFave, Search and Seizure § 5.1, at 2 (3d ed.1996).

**9.** *Id.*

**10.** *United States v. Webster,* 750 F.2d 307, 327 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985).

**11.** 3 LaFave, *supra* note 1, § 6.5, at 345.

the purpose of conducting a search. Officer Eipper described no exigent circumstances justifying the search, and, since Woodall and Dotson had been traveling about in Hatton's car, there are no grounds for holding that their presence in Appellant's vehicle constituted exigency per se. It is undisputed that Officer Eipper possessed probable cause to arrest Woodall and Dotson at least twenty-four hours before he conducted the search of Appellant's vehicle. It is also undisputed that he never attempted to secure a warrant to search or arrest the two suspects. Woodall and Dotson could not destroy the evidence of their use of the stolen credit card to purchase a motel room because such evidence was not in their possession at the time of the stop. Nor, for that matter, could Woodall destroy the evidence regarding his attempts to sell the scanner.

The majority appears to hold that automobiles are a constitutional no-man's land, as though we shed Fourth Amendment protections like a snakeskin when we enter a vehicle. Yet, in upholding DWI detentions, we have repeatedly detailed the facts creating the justification for immediate police action in stopping the vehicle. In analyzing searches of trunks of cars and containers within the vehicle, the courts have refused to recognize a blanket Fourth Amendment vacuum.

The issue before us is not whether there was probable cause to believe that Woodall and Dotson had committed a crime. The issue is whether there was a constitutionally lawful seizure of Appellant when Officer Eipper pulled over her car. Because the majority does not address this primary and controlling issue, I respectfully dissent.