Opinion issued June 5, 2003




     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00588-CR




JILL ALEENE BARTHOLF, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 880308




 
 
 
MEMORANDUM OPINION
          Jill Aleene Bartholf, appellant, pleaded guilty to possession of heroin.


 The
trial court deferred adjudication and placed appellant on two years community
supervision. In two points of error, appellant argues that the trial court erred in not
granting her motion to suppress evidence because (1) her detention was an illegal
Terry stop and (2) the search of her purse was illegal. We affirm.
Facts On June 21, 2001, Harris County Sheriff’s deputies were watching a
convenience store at 330 West Gulf Bank in Houston because of a tip that drug
transactions were taking place at the store. Appellant drove into the parking lot of the
convenience store and parked her car. A man, Jerry Cruz, walked up to the driver’s
side of her car and spoke with her. Appellant never got out of her car. Cruz went
inside the convenience store, came out of the store with nothing in his hands, went
to the side of the convenience store, came back from the side of the convenience store
holding a plastic grocery bag, and then walked to appellant’s car. Cruz got into the
passenger side of appellant’s car.
          When Cruz got into the car, the officers watching the convenience store pulled
their surveillance van up behind the car, preventing appellant from backing out of her
parking spot. Five officers got out of the van and approached the car. Cruz was
asked to get out of the car and identify himself, and he was arrested for narcotics
possession. Appellant was also asked to get out of the car.
          Deputy Palermo testified that appellant consented orally to a search of her car.
He testified that appellant got out of the car with her purse and that he saw “track
marks”


 on the top of her hands. He asked her to roll up her sleeves and show him
her arms. Palermo searched appellant’s car, and did not find any evidence of a crime. 
He testified that appellant consented to a search of her purse; and he further testified
that, prior to his asking for consent to search her purse, appellant admitted that she
had used heroin in the past and had needles in her purse. Palermo searched
appellant’s purse and found three syringes and a bottle cap with a dark colored
residue.
          Appellant testified that when she parked at the convenience store, she got out
of her car and saw Cruz. She hugged Cruz and said hello. Cruz asked her if she
could give him a ride around the corner. She told him that she could and went into
the convenience store to buy cigarettes. She came out of the convenience store after
buying her cigarettes and got into her car. Cruz had gone around the corner of the
building to get “whatever he needed to take home.” Cruz got into appellant’s car, and
as she was pulling out of the parking spot, a van blocked her in. The officers who got
out of the van asked Cruz and appellant to get out of the car. 
          Cruz was handcuffed immediately, and appellant was taken 10 feet away from
her car. Appellant was asked not to face the car and she was asked questions about
drugs. Appellant testified that she was not read her Miranda rights, and she did not
feel that she was free to go. She turned around to face her car and noticed that
officers were searching it. She was asked to remove her jewelry, roll up her sleeves,
and take off her shoes. She was asked if she had ever used drugs, and she said she
had in the past. Appellant admitted that she had track marks on her hands. Appellant
testified that she did not get out of her car with her purse and did not give the deputies
permission to search her car or her purse.
Motion to SuppressIn two points of error, appellant argues that the trial court erred in denying her
motion to suppress evidence because her detention was an illegal Terry stop and the
search of her purse was illegal. Appellant specifically contends that the Terry stop
was illegal because the officers did not possess specific, articulable facts which, when
coupled with rational inferences from those facts, would lead to the conclusion that
she was engaging in criminal activity. She also contends that the search of her purse
was illegal because the police officers did not have any specific facts that she was
armed and dangerous or, in the alternative, that the State proved by clear and
convincing evidence that she freely and voluntarily consented to the search.
          Standard of Review
          We review a trial court’s ruling on a motion to suppress evidence for abuse of
discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Taylor
v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). The
Court will afford almost total deference to a trial court’s determination of historical
facts supported by the record, especially when the findings are based on the
evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). The fact finder is the sole judge of the witnesses’ credibility and
may accept or reject any or all of the witnesses’ testimony. Taylor, 945 S.W.2d at
297. However, when, as here, we are reviewing a mixed question of law and fact, we
conduct a de novo review. Guzman, 955 S.W.2d at 89. 
          Terry Stop
          A police officer may briefly stop a suspicious individual to determine his
identity or to maintain the status quo momentarily while obtaining more information. 
Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994). Investigative
detentions must be reasonably related in scope to the circumstances that justified the
interference in the first place. State v. Cardenas, 36 S.W.3d 243, 246 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). To justify an intrusion, the officer must
have specific, articulable facts which, in light of his experience and personal
knowledge, together with reasonable inferences from those facts, reasonably warrant
the intrusion on the freedom of the citizen detained for further investigation. 
Martinez v. State, 29 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2000, pet.
ref’d) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). 
          The information provoking the officer’s suspicions falls into four general
categories: information gleaned from first-hand observation by the officer; 
information obtained from a confidential informant; information provided by a
concerned citizen reporting a possible crime in progress or of recent origin; or
information provided by an anonymous tipster. Blevins v. State, 74 S.W.3d 125, 130-31 (Tex. App.—Fort Worth 2002, pet. ref’d). Information observed first-hand by a
police officer is highly reliable, and, consequently, the investigative stop Fourth
Amendment analysis in cases involving first-hand police observation focuses not on
reliability, but on whether the information gives rise to a reasonable articulable
suspicion. Id. However, anonymous tips fall at the opposite end of the reliability
spectrum. Id. A tip by an anonymous informant of undisclosed reliability standing
alone rarely will establish the requisite level of suspicion necessary to justify an
investigative stop. Id. There must be some further indicia of reliability or some
additional facts from which a police officer may reasonably conclude that an
investigative stop is justified. Id. Therefore, we must balance the quality of the
information against the quantity of information when the information provoking an
officer’s suspicion is from an anonymous tipster. Id. 
          Here, the officers were at the convenience store because of an anonymous tip
that drug transactions were taking place. The officers saw appellant acting peculiarly
by parking at the store, not going into the store, and talking to Cruz through the
driver’s side window. Furthermore, Cruz was seen walking into the store after talking
to appellant, walking to the side of the store, retrieving a plastic bag, and then getting
into appellant’s car. Palermo testified that, based on his training and experience, this
chain of events was consistent with a drug transaction. Based on these facts, the
officers had reliable information and articulable facts, coupled with their experience
and inferences based on the facts, to reasonably suspect criminal activity, justifying
the initial Terry stop. 
          We overrule appellant’s first point of error.
          Purse Search
          One of the well-established exceptions to the warrant and probable cause
requirements of the Fourth Amendment is a search conducted pursuant to consent. 
Spight v. State, 76 S.W.3d 761, 768 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
Constitutional proscriptions against warrantless searches and seizures do not come
into play when a person gives free and voluntary consent to a search. Id. Voluntary
consent to a warrantless search violates neither the United States or Texas
Constitutions, nor the laws of Texas. Id.
          In order to be valid, consent must “not be coerced, by explicit or implicit
means, by implied threat or covert force.” Schneckloth v. Bustamonte, 412 U.S. 218,
228, 93 S. Ct. 2041, 2048 (1973). Although the United States Constitution only
requires the State to prove the voluntariness of consent by a preponderance of the
evidence, the Texas Constitution requires the State to show by clear and convincing
evidence that the consent was freely given. Spight, 76 S.W.3d at 768. If the record
supports a finding by clear and convincing evidence that consent to search was free
and voluntary, we may not disturb that finding. Id.
          Based upon the testimony, the trial court could have believed that Palermo
asked appellant for consent to search her car and purse. The trial court could also
have believed that appellant consented to the search. Appellant gave contrary
testimony; but the trial court, as the fact-finder, was free to disbelieve her. See
Johnson v. State, 68 S.W.3d 644, 652-54 (Tex. Crim. App. 2002) (holding that
Johnson consented to the search even though no Miranda warnings were given and
no consent to search form was signed). Given these presuppositions, we consider
whether the consent was voluntary.
          In determining whether an accused’s consent to search was voluntary, we look
to the totality of the circumstances. Id. at 653. The record shows that Palermo saw
track marks on appellant’s hands, appellant told Palermo that she used heroin, and
appellant told Palermo that she had needles in her purse. The record further shows
that Palermo asked appellant for consent to search her purse and that there was
conflicting testimony that she consented orally to that search. No one testified that
threats of any kind were made. In reviewing a motion to suppress, we give almost
total deference to the trial court’s determination of historical facts. Guzman, 955
S.W.2d at 89. This evidence is sufficient to support the trial court’s determination
that appellant’s consent was voluntary. Martinez v. State, 17 S.W.3d 677, 683 (Tex.
Crim. App. 2000).
          We overrule appellant’s second point of error.Conclusion
          We affirm the judgment of the trial court.
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Hedges, Nuchia, and Keyes.
Do not publish. Tex. R. App. P. 47.2(b).