

# NUMBERS 13-14-00680-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                                           **Appellant,**

**v.**

**ISRAEL RAMIREZ,**                                                              **Appellee.**

### On appeal from the 94th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Perkes**

The State of Texas appeals the trial court's granting of a motion to suppress in favor of appellee Israel Ramirez ("Ramirez"). After Ramirez was indicted for possession of heroin, a state jail felony, he filed a motion to suppress evidence. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West, Westlaw through Ch. 46 2015 R.S.). The trial

court granted Ramirez's motion. By one issue, the State argues that a corroborated tip gave police officers probable cause to search a capsule containing heroin. We affirm.

## I. BACKGROUND

Robstown Police Officers Ernest Mendoza and John Garcia responded to a disturbance. At the scene, Officer Mendoza observed people in the road arguing. Officer Mendoza exited his vehicle and separated them. Ramirez's sister, Lori Martinez, was involved in the disturbance. Officer Mendoza asked Lori if she had any weapons on her and if he could check her pockets. Lori agreed, and while Officer Mendoza searched her, Lori whispered, "hey, [Ramirez's] got heroin on him."

At that point, Officers Garcia and Mendoza saw Ramirez begin walking away from the scene towards his home. As Officer Mendoza attempted to make contact with Ramirez, he relayed Lori's statement to Officer Garcia about Ramirez possessing heroin. When Officers Mendoza and Garcia approached Ramirez, he appeared nervous and tried to avoid them. Officer Garcia continued his approach, but Ramirez walked away and moved behind an SUV. After Officer Mendoza walked around the other side of the SUV, they made contact with Ramirez.

Officer Garcia ordered Ramirez to keep his hands on the SUV because Ramirez kept reaching into his right pocket. Officer Garcia asked Ramirez if he had any weapons. Ramirez responded that he had a pocket knife. Officer Garcia placed Ramirez in handcuffs and asked if he could remove the knife and contents of his pocket. Ramirez answered affirmatively. Officer Garcia retrieved a knife and keychain from Ramirez's

2

right pocket. Attached to the keychain was a silver, capsule-shaped container. Inside the container was black tar heroin.

Testifying at the hearing on Ramirez's motion to suppress, Officer Mendoza admitted that he had no knowledge regarding the truthfulness of Lori's statements about her brother possessing heroin and that he had only spoken with Lori for approximately eight seconds before receiving the tip. Officer Mendoza did not know Lori's full name, where she lived, her date of birth, her telephone number, her criminal history, or any other pertinent information. Officer Mendoza agreed that Lori could have been lying in her statements to police.

Officer Garcia testified that although he handcuffed Ramirez prior to retrieving the knife, he did not place Ramirez under arrest. He explained that he recognized the capsule-shaped container as similar to other containers used to conceal narcotics. Officer Garcia acknowledged that Ramirez did not give consent for the officers to search the container, and that he did not obtain a search warrant.

Following the hearing, the trial court granted Ramirez's motion to suppress and issued comprehensive findings of fact and conclusions of law. In its findings of fact, the trial court found in pertinent part:

13. Officer Mendoza had no knowledge regarding Lori Ramirez's truthfulness or veracity of her statement.

. . . .

15. Officer Mendoza agreed that Lori Ramirez's statement could have been untruthful or made with the intention of shifting focus from her.

16. At the time Defendant, Israel Ramirez was contacted, the officers did not have evidence that he had committed a crime.

3

. . . .

23. Officer Garcia next asked if he could grab the knife and the contents of Defendant's pocket because suspects are not allowed to retrieve weapons themselves due to officer safety concerns.

24. Defendant said "okay" or "yes" to Officer Garcia's request that Officer Garcia be allowed to empty the contents of Defendants' pocket.

25. Officer Garcia retrieved a knife and keychain from Defendant's pocket; attached to the keychain was a silver, capsule-shaped container.

26. Officer Garcia removed the knife, after handcuffing Defendant, for safety reasons.

27. The knife retrieved was not an illegal knife.

28. At the point of removing the knife, Defendant was handcuffed but not under arrest.

29. Officer Garcia had never seen a container such as this used as a weapon.

30. Officer Garcia testified that based on his experience, including cases where he found narcotics in similar containers (sic).

31. The Court did not believe this part of the officers' testimony.

32. Officer Garcia did not believe the small container was a weapon, he opened it for the sole purpose of looking for narcotics.

33. Defendant did not consent to Officer Garcia's searching the capsule that was attached to the keychain in that pocket.

34. Defendant was not under arrest at the time of searching the container.

35. Defendant did not provide consent to search the container.

36. Officer Garcia did not have a warrant authorizing search of the container, absent consent of Defendant.

In its conclusions of law, the trial court concluded as follows:

4

1. Based on the above findings and the video admitted in evidence, Officer Garcia lacked probable cause to search the capsule in which black tar heroin was allegedly found.

2. Based on the above findings and the video admitted in evidence, Defendant was not under arrest, therefore, search of container was not incident to arrest.

3. Based on the above findings and the video admitted in evidence, any statements made by Lori Ramirez were insufficient to create probable cause because neither officer could, nor did know, testify as to whether Lori Ramirez was credible, nor to the truthfulness or veracity of her statements.

This appeal followed. By a single issue, the State argues that Officer Garcia had probable cause to search the heroin-containing capsule.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State,* 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *Crain v. State,* 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court with respect to its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* However, the question of whether a specific search or seizure is "reasonable" or supported by probable cause under the Fourth Amendment is subject to de novo review. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006).

5

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (en banc). A trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc). We must view the evidence in the light that is most favorable to the trial court's ruling, and we are obligated to uphold the trial court's ruling on a motion to suppress if that ruling is supported by the record and correct under any applicable theory of law. *State v. Castleberry,* 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *Ross,* 32 S.W.3d at 855–56.

### III. APPLICABLE LAW

Texas uses the "totality of the circumstances" test for determining probable cause for a warrantless search and seizure. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 1988). The burden is on the State to prove the existence of probable cause to justify a warrantless arrest or search. *Brown v. State*, 481 S.W.2d 106, 109 (Tex. Crim. App. 1972) (citations omitted). Probable cause for a search exists where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime. *Id.* at 110.

Under this comprehensive, totality of the circumstances approach, the quality of the information possessed is weighed against the quantity of information possessed. *See Rojas v. State*, 797 S.W.2d 41, 43 (Tex. Crim. App. 1990) (balancing quality of

6

information against quantity of information in the probable cause context). That is, a weakness in the quality of the information possessed may be overcome by the requisite quantity of corroborating facts demonstrating the reliability of the information. *Smith v. State*, 58 S.W.3d 784, 790 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (balancing quality of information against quantity of information in the investigative stop context). Conversely, where the reliability of the information is increased, less corroboration is necessary. *State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd).

Probable cause may arise from a tip supplied by a confidential informant if it is corroborated. *Sailo*, 910 S.W.2d at 189 (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). When information comes to police through an informant's tip, courts must consider the informant's reliability and basis of knowledge in answering the "practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* (citing *Gates*, 462 U.S. at 242).

## IV.  ANALYSIS

Conceding that the tip was not sufficient by itself to support probable cause, the State argues instead that the tip was corroborated.[1] *See Rojas,* 797 S.W.2d at 44. According to the State, the following circumstances corroborate the informant's tip: (1) Ramirez was walking away from the scene of the disturbance that prompted police intervention; (2) Ramirez was trying to avoid the officers; (3) Ramirez was nervous; and (4) Ramirez kept reaching into his right front pocket. The State contends that these facts,

---

[1] The State also concedes that Lori is not a citizen-informant whose tip would be presumed reliable. *See Elardo v. State*, 163 S.W.3d 760, 768–69 (Tex. App.—Texarkana 2005, pet. ref'd).

combined with the tip, would allow a reasonable officer to conclude that Ramirez had contraband in his front pocket.

Officer Garcia, however, did not find the heroin in Ramirez's pockets, but instead found it concealed in a capsule attached to Ramirez's keychain. Officer Garcia claimed that his training and experience let him conclude that the capsule contained narcotics, but the trial court found that this specific part of Officer Garcia's testimony was not credible. *See Maxwell,* 73 S.W.3d at 281. Although Officer Garcia testified to his previous experience in investigating drug crimes, there is nothing in the record that would substantiate his claim that the capsule could be linked to narcotics possession. The trial court did not abuse its discretion in finding the piece of testimony not credible. *See Turrubiate,* 399 S.W.3d at 150.

Therefore, we confine our analysis to determining whether the States' listed facts, coupled with the informant's tip, create probable cause to search the keychain. We conclude they do not. The nonspecific tip from Ramirez's sister was the sole and exclusive justification for the initial investigatory stop, which produced the knife and keychain. A subsequent search of the container on the keychain produced the heroin. In justifying his probable cause to search the container, Officer Garcia testified that: "I had reason to believe that there was possible narcotics in that container. Through my experience, I have found narcotics in a container like that before."

In *Guzman v. State*, the police officers received an anonymous tip that the defendant was carrying balloons of heroin in his mouth. 955 S.W.2d 85, 90 (Tex. Crim. App. 1997) (en banc). As the officers approached the defendant, he hurriedly walked

8

away and began overtly swallowing when officer asked him what was in his mouth. *Id.* The defendant was located in an area well known for drug trafficking. In considering the totality-of-circumstances, the court concluded the officers had probable cause to arrest the defendant.

Unlike *Guzman*, Officer Garcia's tip was not specific enough to turn seemingly innocuous behavior into signs of criminality. Lori did not mention where the heroin was located, so Ramirez reaching into his pocket was not a sign of criminal activity. *See id.* (citing *Stull v. State*, 772 S.W.2d 449, 452 (Tex. Crim. App. 1989) (en banc)). Additionally, Lori never gave police any information which officers could then independently confirm—a necessary component to test for reliability. *See Blevins v. State*, 74 S.W.3d 125, 132 (Tex. App.—Fort Worth 2002, pet. ref'd). Although Ramirez was walking away from officers as they started to make contact with him, he was walking towards his house. Returning to a residence is not the same as fleeing. See *Pyles v. State*, 755 S.W.2d 98, 109 (Tex. Crim. App. 1988) (en banc) (factors to consider when determining whether suspect may be committing an offense include flight when officers approach). Officer Garcia testified that Ramirez generally appeared nervous. That statement is overbroad, especially considering that Ramirez informed officers that he was carrying a pocketknife and allowed Officer Garcia to search for weapons.

We conclude the trial court did not abuse its discretion in granting Ramirez's motion to suppress. Under the totality of the circumstances, the officers did not have probable cause to justify a warrantless search of the capsule-shaped container. As

9

such, the search of the container—even under a valid investigative detention—was an illegal search.   *See Rojas,* 797 S.W.2d at 43; *Brown,* 481 S.W.2d at 111.

**V.     CONCLUSION**

We affirm the trial court's order.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of August, 2015.

10