11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

Frank Madarin Tasby

Appellant

Vs.                   No.
11-02-00110-CR B Appeal from Dallas County

State of Texas

Appellee

 

A jury
convicted appellant of aggravated robbery. 
TEX. PENAL CODE ANN. ' 29.03 (Vernon 2003).  The jury
further found that appellant had a prior felony conviction and sentenced
appellant to confinement for life and a $10,000 fine.  TEX. PENAL CODE ANN. ' 12.42(c)(1) (Vernon 2003).  We
affirm.

Issues
Presented

Appellant
presents nine points of error in this appeal. 
In Points of Error Nos. 1 and 2, appellant challenges the legal and
factual sufficiency of the evidence.  In
Points of Error Nos. 3 through 5, appellant challenges the exclusion of three
venire members who were struck for cause. 
In Point of Error No. 6, appellant argues that he was denied a speedy
trial.  In Point of Error No. 7,
appellant questions the trial court=s decision to deny his motion to suppress evidence.  In Point of Error No. 8, appellant argues
that the trial court erred by allowing a tainted in-court identification; and,
in Point of Error No. 9, appellant argues that the State did not prove an
extraneous offense beyond a reasonable doubt. We will address the points of
error in the order they occurred during trial.

Background
Facts

As she was
leaving a liquor store on June 22, 2001, Maria Lupian noticed four black men
exiting a green Eclipse and entering the liquor store.  Lupian had a feeling something bad was about
to occur, so she noted the make, color, and model of the vehicle; and wrote
down the license plate number.  As she
was entering her car, she heard and saw gunshots from inside the liquor
store.  Lupian drove to a 7-Eleven where
there were some pay phones to wait for the police to arrive.  Lupian later picked appellant and one other
suspect out of picture lineups and also identified appellant in open court as
one of the men entering the store. 








The liquor
store was owned by Can Phan.  She was
helping a customer when the men entered her store.  One of the men immediately shot Phan and stepped on her as he
proceeded to take money from the cash register.  The men also took a pistol owned by Phan and both surveillance
tapes from the store.  The men also shot
Rodney Griffin, a 17-year-old employee, and threatened Phan=s husband and 12-year-old son.  As a result of the shooting, Phan is
confined to a wheelchair for life.

Police
determined the ownership of the green Eclipse and found the car parked at the
owner=s home. 
The police set up a surveillance of the residence.  At approximately 11:55 p.m. that same night,
police observed a brown Cadillac stop at the house and saw a person from inside
the house enter the car.  Then the car
left at a high rate of speed.  Officer
Jeff Burge followed the car in a marked police car.  The police initiated a traffic stop after the driver committed
two traffic violations.  Appellant was
the passenger in the car.  The police
discovered one of the surveillance tapes from the liquor store under the front
seat of the car and found a gun in appellant=s pocket.  Appellant=s gun was later determined to be one of the
guns used in the robbery.

Voir
Dire Challenges

In his
third, fourth, and fifth points of error, appellant contends that the trial
court erred in granting the State=s challenges for cause regarding three members of the venire.  The trial court granted the challenges on
the ground that the venire members could not follow the law.  TEX. CODE CRIM. PRO. ANN. art. 35.16(b)(3)
(Vernon Supp. 2003).   To show error,
appellant must show that the trial court=s action was incorrect and that the error caused harm to the defendant
that justifies a reversal.  Bell v.
State, 724 S.W.2d 780, 795 (Tex.Cr.App.1986), cert. den=d, 479 U.S. 1046 (1987).  The
misapplication of Article 35.16(b)(3) is not constitutional error.  Jones v. State, 982 S.W.2d 386, 391
(Tex.Cr.App.1998), cert. den=d, 528 U.S. 985 (1999).  The
erroneous excusing of a venire member under Article 35.16(b)(3) will call for
reversal only if the record shows that the error deprived the defendant of a
lawfully constituted jury.  Jones v.
State, supra at 394; see TEX.R.APP.P. 44.2(b). 
The purpose of challenges for cause is to remove jurors who are not
qualified.  Ford v. State, 73 S.W.3d
923, 925 (Tex.Cr.App.2002).  There is no
right to have a particular person on the jury; challenges for cause should be
liberally granted.  Ford v. State, supra
at 925; Jones v. State, supra at 393-94. 









Appellant must show both error and harm.  We need not determine whether the trial court erred in excluding
the three venire members.  Resolution of
the issue need go no further than an examination of the lack of harm to
appellant.  Appellant stated that the
trial court=s action of granting the State=s challenges left three objectionable jurors
on the panel, but appellant failed to identify which jurors were objectionable
or explain why the jury selected was not lawfully constituted; thus, there is
no evidence that the defendant was deprived of a lawfully constituted
jury.  Appellant=s third, fourth, and fifth points of error
are overruled.

Speedy Trial

Appellant complains in his sixth point that his constitutional right to
a speedy trial was violated.  We
disagree.  A speedy trial analysis
requires courts to use a balancing test in which the conduct of both the
prosecution and the defendant are weighed. 
Barker v. Wingo, 407 U.S. 514, 530 (1972).  The factors to be weighed in the balance include, but are not
necessarily limited to, length of the delay, the reason for the delay, the
defendant=s assertion of his speedy trial right, and
the prejudice to the defendant resulting from the delay.  Barker v. Wingo, supra at 516, 530;   Dragoo v. State, No. 1733-01, 2003
Tex.Cr.App. LEXIS 11, at *7 (Jan. 22, 2003); 
Zamorano v. State, 84 S.W.3d 643, 647-48 (Tex.Cr.App.2002).  We review the trial court=s ruling with a bifurcated standard of
review: an abuse of discretion standard for the factual components and a de
novo standard for the legal components. 
Zamorano v. State, supra at 648.

The length of the delay between an initial charge and trial (or the
defendant=s demand for a speedy trial) acts as a Atriggering mechanism.@ 
Zamorano v. State, supra at 648. 
Unless the delay is presumptively prejudicial, courts need not inquire
into examining the other three factors. 
Zamorano v. State, supra.  In
general, courts deem delay approaching one year to be Aunreasonable enough to trigger the Barker
enquiry.@ 
Dragoo v. State, supra at *7-8 (quoting Doggett v. United States, 505
U.S. 647, 652 n.1 (1992)). Here, appellant was arrested in June 2001,  and tried on March 5, 2002, an interval of
eight and one-half months.  Under the
facts of this case, the time period does not cross the threshold of being
unreasonable enough to warrant a Barker enquiry.  








Moreover, even weighing the factors, appellant cannot establish a
constitutional violation.  The time
period from arrest to trial was just eight and one-half months.  The initial trial setting was November 12,
2001, but was reset for trial on March 5, 2002, because of a crowded court
docket. Appellant filed his motion for a speedy trial couched as a motion to
dismiss in late December 2001, six months after arrest.  At the hearing on the day of trial, the only
evidence appellant offered was his testimony that he had lost contact with his
witnesses.  He did not name the
witnesses.  Appellant did not show any
diligence in procuring the witnesses, nor did he explain why the witnesses were
material to the case.  Harris v. State,
489 S.W.2d 303, 308-09 (Tex.Cr.App.1973)(requiring appellant to show that the
witnesses were unavailable, that their testimony might be material and relevant
to the case, and that appellant exercised due diligence in his attempt to find
them and produce them at trial). 
Appellant=s sixth point is overruled. 

Motion to Suppress

In his seventh point of error, appellant complains that the trial court
erred in denying his motion to suppress a gun and videotape seized during a
traffic stop because the police had no reason for the stop.  Officer Jeff Burge testified that he was
assigned as part of the surveillance team on the vehicle believed to be used in
the aggravated robbery.  Officer Burge
and his partner, Officer Taylor, were in a patrol car positioned a few blocks
away from the house.  Officer Burge was
instructed by an undercover officer that a 1988 brown Cadillac was leaving the
house at a high rate of speed. Officer Burge said that they followed the
Cadillac until it committed two traffic violations of failure to use a turn
signal.  TEX. TRANSP. CODE ANN. ' 545.104(b) (Vernon 1999).  When Officer Burge and Officer Taylor
approached the car, they noticed appellant, who was in the front passenger
seat, bend over.  Appellant appeared to
be retrieving or placing something under the front seat.  Officer Burge had appellant step out of the
car, then he checked under the front seat and found a surveillance tape from
Phan=s store. 
Officer Taylor meanwhile searched appellant and found a pistol in
appellant=s pocket. 
Appellant was not the owner of the car. 
The trial court first ruled that appellant did not have standing to
complain about the videotape, then ruled that both items were admissible.

The historical facts are not disputed; therefore, we review the ruling
on the motion to suppress de novo.  Oles
v. State, 993 S.W.2d 103, 106 (Tex.Cr.App.1999)(citing Guzman v. State, 955
S.W.2d 85, 89 (Tex.Cr.App.1997)).








We first consider the legality of appellant=s detention. 
Generally, a peace officer need not have probable cause to detain a
person for investigation, but he must have a reasonable suspicion that criminal
activity is afoot.  Terry v. Ohio, 392
U.S. 1, 21 (1968); Woods v. State, 956 S.W.2d 33, 35 (Tex.Cr.App.1997);
Reynolds v. State, 962 S.W.2d 307, 311 (Tex.App. ‑ Houston [14th Dist.]
1998, pet=n ref'd). 
We must examine the reasonableness of a temporary detention in light of
the totality of the circumstances. 
Woods v. State, supra at 38.   An
officer must have Aspecific
articulable facts which, in light of his experience and personal knowledge,
together with inferences from those facts@ would justify the detention.  
Reynolds v. State, supra at 311 (citing Johnson v. State, 658 S.W.2d
623, 626 (Tex.Cr.App.1983)).  These
facts and experiences must create a reasonable suspicion in the officer=s mind that some unusual activity is or has
occurred, that the detained person is connected with the activity, and that the
unusual activity is related to the commission of a crime.  Davis v. State, 947 S.W.2d 240, 244
(Tex.Cr.App.1997).  In determining
whether the officer=s
suspicion was reasonable, we employ an objective standard:  whether the facts available to the officer
at the moment of detention warrant a person of reasonable caution to believe
that the action taken was appropriate. 
Terry v. Ohio, supra at 21‑22; 
Hernandez v. State, 983 S.W.2d 867, 869 (Tex.App. ‑ Austin 1998,
pet=n ref=d)(quoting Davis v. State, supra at 243).

It is well settled that a detention is justified when a person commits
a traffic violation in an officer=s presence.  McVickers v. State,
874 S.W.2d 662, 664 (Tex.Cr.App.1993)(running a red light);  Garcia v. State, 827 S.W.2d 937, 944
(Tex.Cr.App.1992)(running a stop sign); Armitage v. State, 637 S.W.2d 936, 939
(Tex.Cr.App.1982)(driving with a defective taillight).  Here, the officers saw the driver commit two
traffic violations.  Section
545.104(b).  The police could detain
appellant.  The officers thought that
the two men inside the Cadillac had been involved in the robbery, and the
officers were apprehensive about their safety. 
Based upon the totality of the circumstances, once Officer Burge saw
appellant reaching under the seat to either place or retrieve an object, the
officers were justified in performing a Terry search of both appellant
and the passenger compartment of the car. 
Woods v. State, supra at 38-39. 
Appellant=s seventh point is overruled. 

In‑Court Identification

In his eighth point of error, appellant complains that an in-court
identification was tainted by a prior photographic identification.  An in‑court identification is
inadmissible when it has been tainted by an impermissibly suggestive pretrial
photographic identification.  Loserth v.
State, 963 S.W.2d 770, 771‑72 (Tex.Cr.App.1998).  Determining the admissibility of an in‑court
identification that is challenged by a defendant requires a two‑step
analysis.  First, we consider whether
the pretrial identification procedure was impermissibly suggestive.  Barley v. State, 906 S.W.2d 27, 33
(Tex.Cr.App.1995), cert. den=d, 516 U.S. 1176 (1996).  Second,
if the procedure was impermissibly suggestive, we determine whether the
procedure gave rise to a very substantial likelihood of irreparable
misidentification.  Barley v. State,
supra at 33.  The defendant bears the
burden to prove these two elements by clear and convincing evidence.  Barley v. State, supra at 34.  If the totality of the circumstances reveals
no substantial likelihood of misidentification despite an impermissibly
suggestive pretrial procedure, the in‑court identification testimony will
be deemed reliable.  Loserth v. State,
supra at 772.  

Whether the trial court erred in admitting into evidence a witness=s identification of the accused involves a
mixed question of law and fact.  Loserth
v. State, supra at 772‑73.  We
extend great deference to the trial court=s resolution of the historical facts pertinent to the case.  Loserth v. State, supra at 773.  However, the consequences arising from those
historical facts are reviewed de novo. 
Loserth v. State, supra at 773‑74.    Thus, under the applicable case law, we will conduct a de novo
review of the trial court=s decision to deny the motion to suppress the in‑court
identification which appellant claimed was based on an impermissibly suggestive
lineup.








Lupian testified that she was leaving Phan=s liquor store when she noticed four or five
males get out of a two-door car and enter the store.  Lupian testified that she had a feeling something bad was going
to happen and wrote down the license plate of the car.  She then heard some shots and moved her
vehicle to the 7-Eleven.  Detective
Stephen David came to her place of employment on June 27, 2001, and showed her
pictures of potential suspects.  Lupian
picked appellant=s photograph out of the set and signed the
back of the photograph.  Lupian also
picked out another picture of an additional suspect.  Lupian testified further that Detective David made no suggestions
of whom she should pick out and that he told her she was not required to pick a
picture.  Out of the presence of the
jury, Lupian identified appellant as one of the men.  She testified that her identification came from seeing appellant
the day of the crime.

Detective David testified that he showed  Lupian six pictures and that Lupian looked through the pictures
and picked appellant out of the set.  He
further said that the five other pictures were of men of similar likeness to
appellant.  Detective David also stated
that he told Lupian that the suspect may or may not be in the lineup; but he
asked  her to look through all the
pictures and, if she saw the person, to point him out.  Detective David said that Lupian picked out
the third picture, which was of appellant.

The record does not support appellant=s argument that the in-court identification was tainted by
impermissibly suggestive out-of-court identifications.  There is no evidence of any identification
procedure which gave rise to a substantial likelihood of
misidentification.  Appellant=s eighth point of error is overruled.

Sufficiency of the Evidence

Appellant contends in his first and second points of error that the
evidence is legally and factually insufficient to support his conviction.  In order to determine if the evidence is
legally sufficient, we must review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979);
Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000).  In order to determine if the evidence is factually sufficient, we
must review all of the evidence in a neutral light and determine whether the
evidence supporting guilt is so weak as to render the conviction clearly wrong
and manifestly unjust or whether the evidence supporting guilt, although
adequate when taken alone, is so greatly outweighed by the overwhelming weight
of contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67 S.W.3d
229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001);
Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d
404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  








A person commits aggravated robbery when the person, in the course of
committing a theft, intentionally, knowingly, or recklessly:  (1) causes serious bodily injury to another
or (2) uses or exhibits a deadly weapon. 
TEX. PENAL CODE ANN. '' 29.02 & 29.03 (Vernon 2003). 
Phan testified that she owned a liquor store and that on June 22, 2001,
she was working the cash register when she saw two black men enter the
store.  One of the men shot her,
injuring her so that she will never be able to walk again.  She also testified that the men took money
from the cash register without her consent. 
Phan was not able to identify appellant from a picture lineup but did
identify him in open court.  A store
employee, Griffin, was shot in the wrist and testified that four black men
entered the store.  Griffin identified appellant
as one of the men.  Griffin testified
that appellant looked like the same man who had come into the store earlier and
asked him about the cost of beer. 
Lupian, who was leaving the store, noticed four black men get out of a
green, two-door Eclipse.  She was able
to identify appellant as one of the men getting out of the car from both a
picture lineup and an in-court identification. 
The police found appellant=s palm print on the inside of the front door of Phan=s store. 
When they performed a Terry search on appellant during a traffic
stop, the police found a surveillance tape from the liquor store underneath
appellant=s seat and a gun in appellant=s pocket. 
A ballistics test determined that this gun was used in the robbery.  

Officer Burge testified that, when he walked up to the car after the
traffic stop, appellant Aput his hands up in the air, and he said, >You got me, you got me, it=s over.=@  The surveillance tape showed
that there were four suspects.  One of
the men in the videotape wore shorts that appeared to be the same shorts
appellant was wearing when arrested.  The
man on the videotape was carrying a gun in the same pocket that the gun on
appellant was found.  The pictures on
the videotape were too blurry to recognize facial appearances, but clothing
could be recognized.  Kerry Lamont
Woodfork, an accomplice, testified that he, appellant, Christopher Bell, and
Adrian Marshall committed the robbery and that appellant was the one who shot
Phan.  Woodfork also identified everyone
in the videotape and explained what they were doing at the time.

When the evidence is viewed in the light most favorable to the verdict,
a rational trier of fact could have found the essential elements beyond a
reasonable doubt.  The evidence is
legally sufficient.  Appellant=s first point of error is overruled.








The evidence is also factually sufficient to support appellant=s conviction.  Appellant testified during the guilt/innocence phase and stated
that:  the palm print did not match his;
he was not present at the robbery; Woodfork was protecting another party by
accusing appellant; though he did possess the gun, he was only trying to sell
the gun; he did not know the gun had been used previously that day in a
robbery;  and  he was either waiting for Bell to pick him up or they were riding
around in Bell=s brown Cadillac when the robbery occurred.

The evidence shows two different versions of events.  The first was presented by the State,
supported by multiple witnesses and physical evidence, and showed that
appellant participated in the robbery; and the second view was presented by
appellant=s testimony.  The fact finder is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Adelman v. State, 828 S.W.2d 418, 421
(Tex.Cr.App.1992).  The fact finder may
choose to believe or disbelieve all or any part of any witness’s
testimony.  Sharp v. State, 707 S.W.2d
611, 614 (Tex.Cr.App.1986), cert. den’d, 488 U.S. 872 (1988).  When the evidence is viewed in a neutral
light, the evidence supporting guilt is neither manifestly unjust nor against
the great weight of the evidence. 
Appellant=s second point is overruled.  

Extraneous Offense

In his ninth point of error, appellant claims that, during the
punishment phase, the State failed to prove beyond a reasonable doubt an
extraneous offense of robbery or aggravated robbery because no testimony from a
complainant was offered by the State. 
We disagree.  During the
punishment phase, Deputy Richard Hamb testified that he compared appellant=s fingerprints to the fingerprints in the
penitentiary packet and determined that they belonged to the same person.  Deputy Hamb then testified that appellant
was sent to prison for robbery.  Pen
packets are permissible evidence to show a defendant=s prior record.  Rogers v. State, 991 S.W.2d 263, 265 (Tex.Cr.App.1999); Beck v.
State, 719 S.W.2d 205, 209 (Tex.Cr.App.1986). 
Moreover, appellant admitted both in the guilt/innocence phase and in
the punishment phase that he had been previously convicted of robbery.  Appellant=s ninth point is overruled.

This Court=s Ruling

The judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

 

March
13, 2003

Publish.  See TEX.R.APP.P. 47.2(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.