Brian Keith Kinnett v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-292-CR

BRIAN KEITH KINNETT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Brian Keith Kinnett appeals his conviction for possession of methamphetamine with intent to deliver.  A jury found Kinnett guilty and assessed his punishment at eighty-five years’ confinement and a $250,000 fine.  In four issues, Kinnett contends that (1) the trial court erred by denying his motion to suppress because law enforcement officers illegally entered his residence, (2) the trial court erred by denying his motion to suppress because the affidavit for the search warrant was defective, (3) the trial court erred by denying his motion for mistrial and motion for new trial where there was evidence of juror misconduct, and (4) the trial court erred by denying his motion for new trial where his trial attorney provided ineffective assistance of counsel with regard to explaining a “sweetheart” plea bargain.  We will affirm.

II.  Factual and Procedural Background

Lieutenant Cavinder was investigating the theft of a couple of motorcycles when he was informed that the missing motorcycles might be located at 928 Huntington Lane in Iowa Park, Texas.  Lieutenant Cavinder proceeded to that adddress to investigate the missing motorcycles and to arrest Kinnett on two pending Iowa Park traffic warrants.  At 928 Huntington Lane, Lieutenant Cavinder observed the stolen motorcycles leaning up against a fence about ten feet from the trailer.  He approached the trailer and knocked on the front door.  Although Lieutenant Cavinder heard scurrying noises inside the trailer, no one answered the door.  When Lieutenant Cavinder walked around to the back of the trailer to observe the rear entrance, he smelled a strong chemical odor that he knew to be associated with the manufacture and use of methamphetamine. 

Lieutenant Cavinder returned to the front door because a female arrived  at the trailer.  He explained to the female
(footnote: 2) that they
(footnote: 3) were looking for Kinnett. The female opened the front door and stepped into the trailer, calling for Kinnett.  When the female stepped inside the trailer, the officers followed her in “because [they] didn’t know what was going on in there.”  Kinnett appeared from the south end of the trailer, walking towards the front door.  Lieutenant Cavinder recognized Kinnett, placed him under arrest, and escorted Kinnett and the female out of the residence onto the front porch.

Police obtained a search warrant to search the trailer, and Lieutenant Cavinder, Investigator John Spragins, and other officers executed the warrant. Investigator Spragins found a material he believed to be a controlled substance in the trailer’s bathroom and a bottle of off-white powder  underneath the floor of one of the bedrooms.  Michelle O’Neal, a senior drug chemist, testified that the material found in the bathroom proved to be six hundred sixty-three grams of methamphetamine and that the bottle of off-white powder contained forty-four point sixty-seven grams of a substance containing ammonia. 

Kinnett moved to suppress the above evidence, but the trial court denied his motion.  Based on this evidence, the jury convicted Kinnett for possession of methamphetamine with intent to deliver.

III.  Complaint of Illegal Search for Person Not Preserved

In his first issue, Kinnett complains that the trial court erred by denying the motion to suppress because law enforcement officers illegally entered his residence to arrest him for traffic ticket warrants, despite the fact that they did not have a search warrant to look for him or valid consent to go into his residence.  The State argues that this complaint is waived.  We agree.

The complaint made on appeal must comport with the complaint made in the trial court, or the error is waived.  
Bell v. State
, 938 S.W.2d 35, 54-55 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997); 
Rezac v. State
, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  Kinnett filed a nonspecific motion to suppress and argued during the suppression hearing that the officers’ 
search
 of the trailer was illegal because the search warrant allegedly authorized officers to search only for him, and he was already under arrest and sitting in a police car when police executed the search warrant.  
On appeal, however, Kinnett argues that the officers’ 
entry
 into the trailer—stepping in behind the female—was illegal because the officers did not have authority, that is, a search warrant or valid consent, to search for and arrest him.  Because Kinnett’s objection at trial does not comport with his argument on appeal, nothing is preserved for appellate review.  
See Banda v. State
, 890 S.W.2d 42, 62 (Tex. Crim. App. 1994), 
cert. denied
, 515 U.S. 1105 (1995).  We overrule Kinnett’s first issue.

IV.  Sufficiency of Search Warrant Affidavit

In his second issue, Kinnett argues that the trial court erred by denying the motion to suppress because the search warrant affidavit contains seven defects.  The State points out that Kinnett did not raise all of these seven alleged defects in the trial court and contends that the trial court did not err in overruling Kinnett’s motion to suppress.  Kinnett made only the following three objections in the trial court:  (1) the affiant did not have personal knowledge of certain information contained in the affidavit; (2) the affidavit failed to delineate a basis for the belief that the odor of ether was associated with methamphetamine; and (3) the affiant failed to inform the magistrate that Kinnett was already in custody at the time the search warrant was obtained, and the search warrant authorized a search for the person only.  We will address these three arguments in turn.  The other four challenges to the search warrant affidavit Kinnett raises under his second issue are waived.  
See Banda
, 890 S.W.2d at 62 (holding nothing is preserved for appellate review when objection at trial does not comport with argument on appeal).

A.  Standard of Review

The appropriate standard of review for a suppression ruling is a bifurcated review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Blevins v. State
, 74 S.W.3d 125, 129 (Tex. App.—Fort Worth 2002, pet. ref’d).  First, we afford almost total deference to the trial court’s determination of the historical facts that the record supports, especially when the trial court’s fact findings are based on an evaluation of credibility and demeanor.  
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing 
Guzman v. State
, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)); 
Blevins
, 74 S.W.3d at 129.  We also afford such deference to a trial court’s ruling on the “application of law to fact questions” if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.  
Guzman
, 955 S.W.2d at 88-89; 
Blevins
, 74 S.W.3d at 129.  Next, we review de novo the trial court’s application of the law of search and seizure to the facts.  
Ross
, 32 S.W.3d at 856; 
Blevins
, 74 S.W.3d at 129.

B.  Affiant’s Personal Knowledge Not Required

A request for a warrant must be supported by a sworn affidavit that sets out facts sufficient to support a finding of probable cause.  
Tex. Code Crim. Proc. Ann.
 art. 18.01(b) (Vernon Supp. 2004).  Information provided to the magistrate may either be based on the direct personal observations of the affiant or on hearsay information from cooperating police officers.
 
Castillo v. State
, 739 S.W.2d 280, 291 (Tex. Crim. App. 1987), 
cert. denied
, 487 U.S. 1228 (1988).  When law enforcement agencies or members of the same agency cooperate in gathering information, the sum of the information known to the officers involved may be considered in determining probable cause. 
Woodward v. State
, 668 S.W.2d 337, 344 (Tex. Crim. App. 1984) (op. on reh’g), 
cert. denied
, 469 U.S. 1181 (1985); 
Wilson v. State
, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st
 Dist.] 2002, pet. ref’d).

Here, Kinnett complained that Deputy George E. Robinson, Jr., who signed the search warrant affidavit, could not and did not have personal knowledge of the facts in the affidavit because only Lieutenant Cavinder and Sergeant Elliott personally observed the trailer.  Kinnett fails, however, to cite any authority for the proposition that a search warrant affidavit may not contain information based on hearsay from cooperating police officers.  
Cf. Castillo
, 739 S.W.2d at 291. The failure to cite supporting authority waives an argument.  
See Rocha v. State
, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (stating that argument that fails to cite supporting authority presents nothing for review).  Consequently, this particular argument presents nothing for our review, and contradicts existing case law.  
See id.
; 
Castillo
, 739 S.W.2d at 291. 

C.  No Requirement to Delineate Drug Recognition Expertise in Affidavit

Kinnett argues that the search warrant affidavit did not establish facts supporting a probable cause determination because the affidavit failed to detail the officers’ basis for believing that the odor of ether they smelled coming from Kinnett’s trailer was associated with methamphetamine.  The affidavit, however, states that on August 29, 2002, six days before the search warrant was obtained, “Sgt. Randy Elliott of the Wichita County Sheriff’s Department along with officers of the North Texas Regional Drug Task Force arrived at 928 Huntington Lane . . . [and] removed a Clandestine Methamphetamine Lab from the residence . . . .”  It further states that on September 4, 2002, Sergeant Elliott accompanied Lieutenant Cavinder to the location to investigate the stolen motorcycles and then states that “[a] very strong odor of ether was emitting from the inside of the trailer.”  A magistrate may make reasonable inferences from the facts set forth in the affidavit.  
Gish v. State
, 606 S.W.2d 883, 886 (Tex. Crim. App. [Panel Op.] 1980).  Giving the affidavit a reasonable, common sense interpretation, it is clear that Sergeant Elliott, an officer working with members of the North Texas Regional Drug Task Force and having been to at least one clandestine methamphetamine lab, would recognize the smell of ether and know that it was associated with the manufacture of methamphetamine.  Given these allegations, the fact that here the police officer affiant did not expressly delineate within the four corners of the affidavit the officers’ basis for believing that the odor of ether coming from Kinnett’s trailer was associated with methamphetamine did not create a defect in the affidavit rendering it insufficient to support the magistrate’s probable cause determination.  
See Cassias v. State
, 719 S.W.2d 585, 589 n.3 (Tex. Crim. App. 1986); 
Richardson v. State
, 622 S.W.2d 852, 857 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh’g); 
see also Gish, 
606 S.W.2d at 885-86 (holding search warrant affidavit sufficiently established probable cause to believe defendant was manufacturing methamphetamine in his residence).

D.  Scope of Search Warrant Extends to Seizure of Evidence

Kinnett next argues that the search warrant affidavit authorized issuance of a search warrant to search only for his person because the affidavit concludes, “WHEREFORE, your Affiant asks for the issuance of a warrant that will authorize him to search said suspected place and premises for said persons.”  The search warrant itself, however, authorizes authorities to “enter the suspected place and premises described in said Affidavit and 
to there search for the property described in said Affidavit 
and to seize it and bring it before me.”  [Emphasis added.]

Search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided.  
Long v. State
, 132 S.W.3d 443, 446 (Tex. Crim. App. 2004).  A hypertechnical construction of a search warrant affidavit similar to the construction Kinnett urges here was rejected in 
Arrick v. State
, 107 S.W.3d 710, 714 (Tex. App.—Austin 2003, pet. ref’d).  In 
Arrick
, the appellant argued that all property seized during the execution of the warrants should have been suppressed because the following language found in the search warrants did not authorize a seizure of property: “NOW, THEREFORE, you are commanded to enter the suspected place and premises described in said Affidavit and to there search for the person described in said Affidavit and to seize him and bring him before me.”  107 S.W.3d at 714.  The court held that when the search warrants and supporting affidavits are read in a common-sense manner, it is clear that the warrants ordered the seizure of the evidence described in the affidavits; appellant’s contention that the warrants authorized only the seizure of his person was without merit.  
Id.

Because the affidavit here identified particular stolen property and narcotics believed to be at the suspected place and premises and because the search warrant authorized seizure of the “property described in said Affidavit,” a common-sense reading of the affidavit and warrant clearly permitted the seizure of such evidence.  
See generally
 
Tex. Code Crim. Proc. Ann.
 art. 18.01, art. 18.04 (Vernon 1977) (discussing search warrants and contents thereof). Kinnett’s contention that the warrant authorized only a seizure of his person is without merit.  
See Arrick
, 107 S.W.3d at 714.

We overrule Kinnett’s second issue.

V.  Alleged Juror Misconduct

The night after the jury returned a verdict of guilty and also heard all of the punishment evidence, but before it returned a verdict on punishment, one of the jurors—Tammie Lewis—telephoned one of the summer interns who was working at the district attorney’s office and assisting in Kinnett’s prosecution—Brian Dasher.  Lewis had admitted during voir dire that she was Dasher’s neighbor.  The morning after receiving the call, Dasher informed the court of this incident, Kinnett moved for a mistrial, and the trial court conducted a hearing on Kinnett’s motion.

Dasher testified that Lewis called him to ask if there would be any way to learn about the outcome of a case that was being tried in another court, and Dasher responded affirmatively.  After mentioning that it was cold in the courtroom during voir dire, Lewis stated that “she was in some way frightened or scared of [Kinnett].”  Dasher responded that he could not comment because he believed he was covered by the instruction not to speak to the jury.  Dasher’s aunt then called to speak to his mother, and he terminated the conversation with Lewis.

Lewis testified that she did call Dasher.  She testified that she talked to Dasher but not about Kinnett.  She said that she did not make any comment about Kinnett being scary.
(footnote: 4)  Lewis also testified that she had received a phone call from the Wichita County Jail on the evening after the testimony in the punishment phase concluded.
(footnote: 5)  The recorded message stated that the call was from an inmate and that she should hang up if she did not wish to take the call. Lewis hung up the phone.  She then dialed the phone number and confirmed that it was the jail’s.  The person who answered the phone at the jail asked her the name of the case in which she was sitting on the jury, and she gave Kinnett’s name.  She testified that the phone call alarmed her since she was sitting on the jury in a criminal case, but that the call would not affect her in any way in the present case.

The trial court then independently questioned Lewis.  Lewis testified that she did not talk to Dasher about the case.  She said she did not recall making a comment about Kinnett being scary.  The trial court thoroughly questioned Lewis about whether she based her decision in the guilt-innocence phase on the evidence in the case, whether she could be objective and open minded in rendering a decision in the punishment phase, and whether she could fairly consider the full range of punishment during her deliberations; Lewis responded affirmatively to each question.  The trial court also confirmed that Lewis did not bring any outside information into the jury deliberations and that she did not make any comments to the other jurors about anything outside the record. 

The trial court denied Kinnett’s motion for mistrial, finding that

the Juror Tammie Lewis received no outside information and based her decision on guilt-innocence only upon what she saw and heard in the courtroom, that is upon the evidence that was admitted by the Court and such exhibits as were admitted by the Court.  And that the Juror Lewis injected no outside information or no improper information in the jury discussions.  And the Court further finds that the Juror Lewis based her decision in the guilt-innocence phase of the trial only on the properly admitted evidence in this trial and such exhibits as were admitted.  And the Court further finds that the Juror Lewis, in deciding the punishment in this case, has received no outside information and can render her decision on the punishment in this case based only upon what she saw and heard in the courtroom, that is the evidence that was admitted during the trial and such exhibits as were admitted.

In his third issue, Kinnett claims that the trial court erred by denying his motion for mistrial and motion for new trial, both based on the above described juror misconduct.  Article 36.22 of the Texas Code of Criminal Procedure provides that “[n]o person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.”  
Tex. Code Crim. Proc. Ann.
 art. 36.22 (Vernon 1981).  When a juror converses with an unauthorized person about the case, “injury to the accused is presumed” and a new trial may be warranted.  
Quinn v. State
, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997).  However, the presumption is rebuttable if it is shown that the case was not discussed or that nothing prejudicial to the accused was said, then appellant has not been injured and the verdict will be upheld.  
Alba v. State
, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995), 
cert. denied
, 516 U.S. 1077 (1996).  In determining whether the State rebutted the presumption of harm, appellate courts should defer to the trial court’s resolution of the historical facts and its determinations concerning credibility and demeanor. 
Quinn
, 958 S.W.2d at 401.

When jury misconduct is raised in a motion for new trial, whether misconduct has occurred is a decision for the trial court, and we will not disturb that ruling absent a clear abuse of discretion.  
Short v. State
, 995 S.W.2d 948, 954 (Tex. App.—Fort Worth 1999, pet. ref'd); 
Hernandez v. State
, 938 S.W.2d 503, 507 (Tex. App.—Waco 1997, pet. ref'd).  A movant for a new trial based on jury misconduct must show that (1) misconduct occurred, and (2) the misconduct resulted in harm to the movant.  
Garza v. State
, 630 S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981).  The trial court is the sole judge of the credibility of the testifying jurors.  
Lewis v. State
, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

Here, deferring to the trial court’s resolution of the historical facts and its determinations concerning credibility and demeanor, the State sufficiently rebutted any presumption of injury to Kinnett occurring because Lewis spoke to Dasher.
(footnote: 6)  
See Quinn
, 958 S.W.2d at 402 (stating that testimony from juror involved in impermissible conversation is enough evidence to support trial court’s ruling that State rebutted presumption of injury); 
Robinson v. State
, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991) (holding same where juror testified that prejudicial statement from sister would not influence her in reaching verdict and that she had not communicated information to other jurors), 
cert. denied
, 512 U.S. 1246 (1994).

Deferring to the trial court’s resolution of historical facts and its determinations concerning credibility and demeanor as we must, we hold that the evidence supports the trial court’s decision to deny Kinnett’s motion for mistrial and his motion for new trial on the ground of improper juror communications.  
See Quinn
, 958 S.W.2d at 402.  We overrule Kinnett’s third issue.

VI.  Effective Assistance of Counsel

In his final issue, Kinnett claims that the trial court erred by denying his motion for new trial based on ineffective assistance of counsel.  Specifically, Kinnett complains that his trial counsel failed to adequately explain a “sweetheart” plea bargain to him so that he could make an informed and conscious decision on how to proceed with his case. 

We apply a 
two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, 
appellant must show that his counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense. 
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
Strickland
, 466 U.S. 
at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id. 
at 690, 104 S. Ct. at 2066.

An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.
 
 Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065
.

Kinnett’s trial counsel, Holly Crampton, testified at the hearing on Kinnett’s motion for new trial that Kinnett hired her to represent him on a motion to revoke his probation.  During negotiations with prosecutors in that case, the prosecutor proposed a plea agreement whereby two drug cases pending against Kinnett would be dismissed if Kinnett would plead to five years incarceration on the revocation case.
(footnote: 7)  Crampton conveyed the plea to Kinnett. She never recommended that Kinnett accept the plea; instead, she gave him the pros and the cons, which they discussed, and he made a decision to reject the plea.

According to Crampton, she went through the State’s files with Kinnett and told him that he was turning down a particularly good offer.  Crampton explained to Kinnett that the State could try him on all three pending indictments if he rejected the plea for the revocation case; however, she did not explain the potential risk of the sentences being stacked.
(footnote: 8)  She told Kinnett that she thought the search warrant in one of the drug cases had problems but that the other drug case had nothing technically wrong with it as far as she could tell.  Consequently, Crampton advised Kinnett that there was a substantial risk that he would go to prison because the evidence pointed to the fact that the drugs found belonged to him and advised him that a conviction would carry a minimum fifteen-year sentence.

Crampton stated that Kinnett viewed the plea as a concession of guilt and took the position that he was not going to spend a day in jail for something he did not do.  Crampton testified that she made it very clear to Kinnett that the plea bargain would be off the table if the prosecutor had to do a contested motion to revoke.  She testified that Kinnett responded that he wanted to go to trial. 

Kinnett’s testimony at the hearing on the motion for new trial sharply contrasted Crampton’s testimony.  Kinnett stated that Crampton told him she could beat each of his cases and “that’s basically the only thing [he] ever heard from her.”  He stated that he did not remember ever going over the State’s files in any detail with Crampton, she did not explain the range of punishment, and she did not tell him about the five-year plea offer from the State until after she had already refused to accept it.

Despite his claim that Crampton did not explain the plea bargain, Kinnett testified that even before trial he understood that the two drug cases would be dropped or dismissed.  Other contradictions that Kinnett made during his testimony included stating that he was happy with the outcome of the revocation hearing and admitting to writing a letter to Crampton in which he stated that he was impressed by her and thought she did her best.  Kinnett further testified that he would have accepted the five-year plea if he had known about it, but he did not accept the twenty-five year plea that was offered by the State on the day of trial.

The only evidence presented to prove that Crampton failed to explain the five-year plea bargain to Kinnett was Kinnett’s own uncorroborated, self-serving testimony, which the trial court, as fact finder, was not required to accept.  
See Reissig v. State
, 929 S.W.2d 109, 113 (Tex. App.—Houston [14th
 Dist.] 1996, pet. ref’d).  
Kinnett’s allegations that Crampton’s assistance was not reasonable under all the circumstances and prevailing professional norms is not firmly founded in the record.  The record does not affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.
  
The trial court simply chose to disbelieve Kinnett’s testimony and to believe Crampton’s testimony. Consequently, the trial court concluded that Kinnett did not carry his burden of proving ineffective assistance of counsel.  
See, e.g., McKinny v. State
, 76 S.W.3d 463, 474 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  We agree with the State that Kinnett has failed to satisfy the first 
Strickland
 prong of demonstrating Crampton’s assistance was not reasonable under all the circumstances and prevailing professional norms 
at the time of the alleged error. 
See Thompson
, 9 S.W.3d at 814.  We overrule Kinnett’s fourth issue.

VII.  Conclusion

Having overruled each of Kinnett’s four issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: July 8, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Lieutenant Cavinder could not specifically recall the female’s relation to Kinnett.  He believes that she said that Kinnett was her sister’s boyfriend, fiancé, or husband. 

3:
Sergeant Elliott assisted Lieutenant Cavinder; however, Sergeant Elliott did not testify at the trial. 

4:
Lewis also testified at Kinnett’s motion for new trial hearing, providing substantially the same testimony.

5:
The court postponed closing arguments and jury deliberation until the following day due to a juror’s need to pick up her child from day care.

6:
Dasher and Lewis testified to slightly different versions of the phone conversation.  However, because it is the juror’s views that may be prejudiced, we consider only the juror’s perceptions.  
Alba
, 905 S.W.2d at 587.

7:
The third pending case, involving a state jail felony, was not part of the negotiations. 

8:
Because the other cases against Kinnett have been dismissed, any alleged deficient performance by failing to assess the risk of stacked sentences cannot meet 
Strickland
’s second prong:  a showing that the 
deficient performance prejudiced the defense.  466 U.S. at 687, 104 S. Ct. at 2064.