COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-292-CR
  
  
BRIAN 
KEITH KINNETT                                                           APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 78TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        Appellant 
Brian Keith Kinnett appeals his conviction for possession of methamphetamine 
with intent to deliver.  A jury found Kinnett guilty and assessed his 
punishment at eighty-five years’ confinement and a $250,000 fine.  In 
four issues, Kinnett contends that (1) the trial court erred by denying his 
motion to suppress because law enforcement officers illegally entered his 
residence, (2) the trial court erred by denying his motion to suppress because 
the affidavit for the search warrant was defective, (3) the trial court erred by 
denying his motion for mistrial and motion for new trial where there was 
evidence of juror misconduct, and (4) the trial court erred by denying his 
motion for new trial where his trial attorney provided ineffective assistance of 
counsel with regard to explaining a “sweetheart” plea bargain.  We will 
affirm.
II. Factual and 
Procedural Background
        Lieutenant 
Cavinder was investigating the theft of a couple of motorcycles when he was 
informed that the missing motorcycles might be located at 928 Huntington Lane in 
Iowa Park, Texas.  Lieutenant Cavinder proceeded to that adddress to 
investigate the missing motorcycles and to arrest Kinnett on two pending Iowa 
Park traffic warrants.  At 928 Huntington Lane, Lieutenant Cavinder 
observed the stolen motorcycles leaning up against a fence about ten feet from 
the trailer.  He approached the trailer and knocked on the front 
door.  Although Lieutenant Cavinder heard scurrying noises inside the 
trailer, no one answered the door.  When Lieutenant Cavinder walked around 
to the back of the trailer to observe the rear entrance, he smelled a strong 
chemical odor that he knew to be associated with the manufacture and use of 
methamphetamine.
        Lieutenant 
Cavinder returned to the front door because a female arrived at the trailer. He 
explained to the female[2]  that they[3]  were looking for Kinnett. The female opened the 
front door and stepped into the trailer, calling for Kinnett.  When the 
female stepped inside the trailer, the officers followed her in “because 
[they] didn’t know what was going on in there.”  Kinnett appeared from 
the south end of the trailer, walking towards the front door.  Lieutenant 
Cavinder recognized Kinnett, placed him under arrest, and escorted Kinnett and 
the female out of the residence onto the front porch.
        Police 
obtained a search warrant to search the trailer, and Lieutenant Cavinder, 
Investigator John Spragins, and other officers executed the warrant.  
Investigator Spragins found a material he believed to be a controlled substance 
in the trailer’s bathroom and a bottle of off-white powder underneath the 
floor of one of the bedrooms.  Michelle O’Neal, a senior drug chemist, 
testified that the material found in the bathroom proved to be six hundred 
sixty-three grams of methamphetamine and that the bottle of off-white powder 
contained forty-four point sixty-seven grams of a substance containing ammonia.
        Kinnett 
moved to suppress the above evidence, but the trial court denied his 
motion.  Based on this evidence, the jury convicted Kinnett for possession 
of methamphetamine with intent to deliver.
III. Complaint 
of Illegal Search for Person Not Preserved
        In 
his first issue, Kinnett complains that the trial court erred by denying the 
motion to suppress because law enforcement officers illegally entered his 
residence to arrest him for traffic ticket warrants, despite the fact that they 
did not have a search warrant to look for him or valid consent to go into his 
residence. The State argues that this complaint is waived.  We agree.
        The 
complaint made on appeal must comport with the complaint made in the trial 
court, or the error is waived.  Bell v. State, 938 S.W.2d 35, 54-55 
(Tex. Crim. App. 1996), cert. denied, 522 U.S. 827 (1997); Rezac v. 
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  Kinnett filed a 
nonspecific motion to suppress and argued during the suppression hearing that 
the officers’ search of the trailer was illegal because the search 
warrant allegedly authorized officers to search only for him, and he was already 
under arrest and sitting in a police car when police executed the search 
warrant.  On appeal, however, Kinnett argues that the officers’ entry 
into the trailer—stepping in behind the female—was illegal because the 
officers did not have authority, that is, a search warrant or valid consent, to 
search for and arrest him.  Because Kinnett’s objection at trial does not 
comport with his argument on appeal, nothing is preserved for appellate 
review.  See Banda v. State, 890 S.W.2d 42, 62 (Tex. Crim. App. 
1994), cert. denied, 515 U.S. 1105 (1995).  We overrule Kinnett’s 
first issue.
IV. Sufficiency 
of Search Warrant Affidavit
        In 
his second issue, Kinnett argues that the trial court erred by denying the 
motion to suppress because the search warrant affidavit contains seven 
defects.  The State points out that Kinnett did not raise all of these 
seven alleged defects in the trial court and contends that the trial court did 
not err in overruling Kinnett’s motion to suppress.  Kinnett made only 
the following three objections in the trial court: (1) the affiant did not have 
personal knowledge of certain information contained in the affidavit; (2) the 
affidavit failed to delineate a basis for the belief that the odor of ether was 
associated with methamphetamine; and (3) the affiant failed to inform the 
magistrate that Kinnett was already in custody at the time the search warrant 
was obtained, and the search warrant authorized a search for the person only. We 
will address these three arguments in turn.  The other four challenges to 
the search warrant affidavit Kinnett raises under his second issue are 
waived.  See Banda, 890 S.W.2d at 62 (holding nothing is preserved 
for appellate review when objection at trial does not comport with argument on 
appeal).
        A. Standard of Review
        The 
appropriate standard of review for a suppression ruling is a bifurcated 
review.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 
2000); Blevins v. State, 74 S.W.3d 125, 129 (Tex. App.—Fort Worth 2002, 
pet. ref’d). First, we afford almost total deference to the trial court’s 
determination of the historical facts that the record supports, especially when 
the trial court’s fact findings are based on an evaluation of credibility and 
demeanor.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) 
(citing Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)); Blevins, 
74 S.W.3d at 129.  We also afford such deference to a trial court’s 
ruling on the “application of law to fact questions” if the resolution of 
those ultimate questions turns on an evaluation of credibility and 
demeanor.  Guzman, 955 S.W.2d at 88-89; Blevins, 74 S.W.3d at 
129.  Next, we review de novo the trial court’s application of the law of 
search and seizure to the facts. Ross, 32 S.W.3d at 856; Blevins, 
74 S.W.3d at 129.
        B. Affiant’s Personal Knowledge Not Required
        A 
request for a warrant must be supported by a sworn affidavit that sets out facts 
sufficient to support a finding of probable cause. Tex. Code Crim. Proc. Ann. art. 18.01(b) 
(Vernon Supp. 2004).  Information provided to the magistrate may either be 
based on the direct personal observations of the affiant or on hearsay 
information from cooperating police officers.  Castillo v. State, 
739 S.W.2d 280, 291 (Tex. Crim. App. 1987), cert. denied, 487 U.S. 1228 
(1988).  When law enforcement agencies or members of the same agency 
cooperate in gathering information, the sum of the information known to the 
officers involved may be considered in determining probable cause.  Woodward 
v. State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1984) (op. on reh’g), cert. 
denied, 469 U.S. 1181 (1985); Wilson v. State, 98 S.W.3d 265, 271 
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).
        Here, 
Kinnett complained that Deputy George E. Robinson, Jr., who signed the search 
warrant affidavit, could not and did not have personal knowledge of the facts in 
the affidavit because only Lieutenant Cavinder and Sergeant Elliott personally 
observed the trailer.  Kinnett fails, however, to cite any authority for 
the proposition that a search warrant affidavit may not contain information 
based on hearsay from cooperating police officers.  Cf. Castillo, 
739 S.W.2d at 291.  The failure to cite supporting authority waives an 
argument.  See Rocha v. State, 16 S.W.3d 1, 20 (Tex. Crim. App. 
2000) (stating that argument that fails to cite supporting authority presents 
nothing for review).  Consequently, this particular argument presents 
nothing for our review, and contradicts existing case law.  See id.; 
Castillo, 739 S.W.2d at 291.
        C. No Requirement to Delineate Drug Recognition 
Expertise in Affidavit
        Kinnett 
argues that the search warrant affidavit did not establish facts supporting a 
probable cause determination because the affidavit failed to detail the 
officers’ basis for believing that the odor of ether they smelled coming from 
Kinnett’s trailer was associated with methamphetamine.  The affidavit, 
however, states that on August 29, 2002, six days before the search warrant was 
obtained, “Sgt. Randy Elliott of the Wichita County Sheriff’s Department 
along with officers of the North Texas Regional Drug Task Force arrived at 928 
Huntington Lane . . . [and] removed a Clandestine Methamphetamine Lab from the 
residence . . . .”  It further states that on September 4, 2002, Sergeant 
Elliott accompanied Lieutenant Cavinder to the location to investigate the 
stolen motorcycles and then states that “[a] very strong odor of ether was 
emitting from the inside of the trailer.”  A magistrate may make 
reasonable inferences from the facts set forth in the affidavit.  Gish 
v. State, 606 S.W.2d 883, 886 (Tex. Crim. App. [Panel Op.] 1980).  
Giving the affidavit a reasonable, common sense interpretation, it is clear that 
Sergeant Elliott, an officer working with members of the North Texas Regional 
Drug Task Force and having been to at least one clandestine methamphetamine lab, 
would recognize the smell of ether and know that it was associated with the 
manufacture of methamphetamine.  Given these allegations, the fact that 
here the police officer affiant did not expressly delineate within the four 
corners of the affidavit the officers’ basis for believing that the odor of 
ether coming from Kinnett’s trailer was associated with methamphetamine did 
not create a defect in the affidavit rendering it insufficient to support the 
magistrate’s probable cause determination.  See Cassias v. State, 
719 S.W.2d 585, 589 n.3 (Tex. Crim. App. 1986); Richardson v. State, 622 
S.W.2d 852, 857 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh’g); see also 
Gish, 606 S.W.2d at 885-86 (holding search warrant affidavit sufficiently 
established probable cause to believe defendant was manufacturing 
methamphetamine in his residence).
        D. Scope of Search Warrant Extends to Seizure of 
Evidence
        Kinnett 
next argues that the search warrant affidavit authorized issuance of a search 
warrant to search only for his person because the affidavit concludes, 
“WHEREFORE, your Affiant asks for the issuance of a warrant that will 
authorize him to search said suspected place and premises for said 
persons.”  The search warrant itself, however, authorizes authorities to 
“enter the suspected place and premises described in said Affidavit and to 
there search for the property described in said Affidavit and to seize it 
and bring it before me.” [Emphasis added.]
        Search 
warrants and affidavits should be considered in a common sense manner, and 
hypertechnical readings should be avoided.  Long v. State, 132 
S.W.3d 443, 446 (Tex. Crim. App. 2004).  A hypertechnical construction of a 
search warrant affidavit similar to the construction Kinnett urges here was 
rejected in Arrick v. State, 107 S.W.3d 710, 714 (Tex. App.—Austin 
2003, pet. ref’d). In Arrick, the appellant argued that all property 
seized during the execution of the warrants should have been suppressed because 
the following language found in the search warrants did not authorize a seizure 
of property: “NOW, THEREFORE, you are commanded to enter the suspected place 
and premises described in said Affidavit and to there search for the person 
described in said Affidavit and to seize him and bring him before me.”  
107 S.W.3d at 714.  The court held that when the search warrants and 
supporting affidavits are read in a common-sense manner, it is clear that the 
warrants ordered the seizure of the evidence described in the affidavits; 
appellant’s contention that the warrants authorized only the seizure of his 
person was without merit.  Id.
        Because 
the affidavit here identified particular stolen property and narcotics believed 
to be at the suspected place and premises and because the search warrant 
authorized seizure of the “property described in said Affidavit,” a 
common-sense reading of the affidavit and warrant clearly permitted the seizure 
of such evidence.  See generally Tex. Code Crim. Proc. Ann. art. 18.01, 
art. 18.04 (Vernon 1977) (discussing search warrants and contents 
thereof).  Kinnett’s contention that the warrant authorized only a 
seizure of his person is without merit.  See Arrick, 107 S.W.3d at 
714.
        We 
overrule Kinnett’s second issue.
V. Alleged 
Juror Misconduct
        The 
night after the jury returned a verdict of guilty and also heard all of the 
punishment evidence, but before it returned a verdict on punishment, one of the 
jurors—Tammie Lewis—telephoned one of the summer interns who was working at 
the district attorney’s office and assisting in Kinnett’s 
prosecution—Brian Dasher.  Lewis had admitted during voir dire that she 
was Dasher’s neighbor.  The morning after receiving the call, Dasher 
informed the court of this incident, Kinnett moved for a mistrial, and the trial 
court conducted a hearing on Kinnett’s motion.
        Dasher 
testified that Lewis called him to ask if there would be any way to learn about 
the outcome of a case that was being tried in another court, and Dasher 
responded affirmatively.  After mentioning that it was cold in the 
courtroom during voir dire, Lewis stated that “she was in some way frightened 
or scared of [Kinnett].”  Dasher responded that he could not comment 
because he believed he was covered by the instruction not to speak to the 
jury.  Dasher’s aunt then called to speak to his mother, and he 
terminated the conversation with Lewis.
        Lewis 
testified that she did call Dasher.  She testified that she talked to 
Dasher but not about Kinnett.  She said that she did not make any comment 
about Kinnett being scary.[4]  Lewis also 
testified that she had received a phone call from the Wichita County Jail on the 
evening after the testimony in the punishment phase concluded.[5]  
The recorded message stated that the call was from an inmate and that she should 
hang up if she did not wish to take the call.  Lewis hung up the 
phone.  She then dialed the phone number and confirmed that it was the 
jail’s.  The person who answered the phone at the jail asked her the name 
of the case in which she was sitting on the jury, and she gave Kinnett’s 
name.  She testified that the phone call alarmed her since she was sitting 
on the jury in a criminal case, but that the call would not affect her in any 
way in the present case.
        The 
trial court then independently questioned Lewis.  Lewis testified that she 
did not talk to Dasher about the case.  She said she did not recall making 
a comment about Kinnett being scary.  The trial court thoroughly questioned 
Lewis about whether she based her decision in the guilt-innocence phase on the 
evidence in the case, whether she could be objective and open minded in 
rendering a decision in the punishment phase, and whether she could fairly 
consider the full range of punishment during her deliberations; Lewis responded 
affirmatively to each question.  The trial court also confirmed that Lewis 
did not bring any outside information into the jury deliberations and that she 
did not make any comments to the other jurors about anything outside the record.
        The 
trial court denied Kinnett’s motion for mistrial, finding that
 
the 
Juror Tammie Lewis received no outside information and based her decision on 
guilt-innocence only upon what she saw and heard in the courtroom, that is upon 
the evidence that was admitted by the Court and such exhibits as were admitted 
by the Court.  And that the Juror Lewis injected no outside information or 
no improper information in the jury discussions.  And the Court further 
finds that the Juror Lewis based her decision in the guilt-innocence phase of 
the trial only on the properly admitted evidence in this trial and such exhibits 
as were admitted.  And the Court further finds that the Juror Lewis, in 
deciding the punishment in this case, has received no outside information and 
can render her decision on the punishment in this case based only upon what she 
saw and heard in the courtroom, that is the evidence that was admitted during 
the trial and such exhibits as were admitted.
 
        In 
his third issue, Kinnett claims that the trial court erred by denying his motion 
for mistrial and motion for new trial, both based on the above described juror 
misconduct.  Article 36.22 of the Texas Code of Criminal Procedure provides 
that “[n]o person shall be permitted to converse with a juror about the case 
on trial except in the presence and by the permission of the court.” Tex. Code Crim. Proc. Ann. art. 36.22 
(Vernon 1981).  When a juror converses with an unauthorized person about 
the case, “injury to the accused is presumed” and a new trial may be 
warranted.  Quinn v. State, 958 S.W.2d 395, 401 (Tex. Crim. App. 
1997).  However, the presumption is rebuttable if it is shown that the case 
was not discussed or that nothing prejudicial to the accused was said, then 
appellant has not been injured and the verdict will be upheld.  Alba v. 
State, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995), cert. denied, 516 
U.S. 1077 (1996).  In determining whether the State rebutted the 
presumption of harm, appellate courts should defer to the trial court’s 
resolution of the historical facts and its determinations concerning credibility 
and demeanor.  Quinn, 958 S.W.2d at 401.
        When 
jury misconduct is raised in a motion for new trial, whether misconduct has 
occurred is a decision for the trial court, and we will not disturb that ruling 
absent a clear abuse of discretion.  Short v. State, 995 S.W.2d 948, 
954 (Tex. App.—Fort Worth 1999, pet. ref'd); Hernandez v. State, 938 
S.W.2d 503, 507 (Tex. App.—Waco 1997, pet. ref'd).  A movant for a new 
trial based on jury misconduct must show that (1) misconduct occurred, and (2) 
the misconduct resulted in harm to the movant.  Garza v. State, 630 
S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981).  The trial court is the 
sole judge of the credibility of the testifying jurors.  Lewis v. State, 
911 S.W.2d 1, 7 (Tex. Crim. App. 1995).
        Here, 
deferring to the trial court’s resolution of the historical facts and its 
determinations concerning credibility and demeanor, the State sufficiently 
rebutted any presumption of injury to Kinnett occurring because Lewis spoke to 
Dasher.[6]  See Quinn, 958 S.W.2d at 402 
(stating that testimony from juror involved in impermissible conversation is 
enough evidence to support trial court’s ruling that State rebutted 
presumption of injury); Robinson v. State, 851 S.W.2d 216, 230 (Tex. 
Crim. App. 1991) (holding same where juror testified that prejudicial statement 
from sister would not influence her in reaching verdict and that she had not 
communicated information to other jurors), cert. denied, 512 U.S. 1246 
(1994).
        Deferring 
to the trial court’s resolution of historical facts and its determinations 
concerning credibility and demeanor as we must, we hold that the evidence 
supports the trial court’s decision to deny Kinnett’s motion for mistrial 
and his motion for new trial on the ground of improper juror 
communications.  See Quinn, 958 S.W.2d at 402.  We overrule 
Kinnett’s third issue.
VI. Effective 
Assistance of Counsel
        In 
his final issue, Kinnett claims that the trial court erred by denying his motion 
for new trial based on ineffective assistance of counsel.  Specifically, 
Kinnett complains that his trial counsel failed to adequately explain a 
“sweetheart” plea bargain to him so that he could make an informed and 
conscious decision on how to proceed with his case.
        We 
apply a two-pronged test to ineffective assistance of counsel claims.  Strickland 
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson 
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant 
must show that his counsel's performance was deficient; second, appellant must 
show the deficient performance prejudiced the defense.  Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.
        In 
evaluating the effectiveness of counsel under the first prong, we look to the 
totality of the representation and the particular circumstances of each 
case.  Thompson, 9 S.W.3d at 813.  The issue is whether 
counsel's assistance was reasonable under all the circumstances and prevailing 
professional norms at the time of the alleged error.  Strickland, 
466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed 
to have rendered adequate assistance and made all significant decisions in the 
exercise of reasonable professional judgment.”  Id. at 690, 104 S. 
Ct. at 2066.
        An 
allegation of ineffective assistance must be firmly founded in the record, and 
the record must affirmatively demonstrate the alleged ineffectiveness.  Thompson, 
9 S.W.3d at 814.  Our scrutiny of counsel's performance must be highly 
deferential, and every effort must be made to eliminate the distorting effects 
of hindsight.  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.
        Kinnett’s 
trial counsel, Holly Crampton, testified at the hearing on Kinnett’s motion 
for new trial that Kinnett hired her to represent him on a motion to revoke his 
probation.  During negotiations with prosecutors in that case, the 
prosecutor proposed a plea agreement whereby two drug cases pending against 
Kinnett would be dismissed if Kinnett would plead to five years incarceration on 
the revocation case.[7]  Crampton conveyed the 
plea to Kinnett.  She never recommended that Kinnett accept the plea; 
instead, she gave him the pros and the cons, which they discussed, and he made a 
decision to reject the plea.
        According 
to Crampton, she went through the State’s files with Kinnett and told him that 
he was turning down a particularly good offer.  Crampton explained to 
Kinnett that the State could try him on all three pending indictments if he 
rejected the plea for the revocation case; however, she did not explain the 
potential risk of the sentences being stacked.[8]  
She told Kinnett that she thought the search warrant in one of the drug cases 
had problems but that the other drug case had nothing technically wrong with it 
as far as she could tell.  Consequently, Crampton advised Kinnett that 
there was a substantial risk that he would go to prison because the evidence 
pointed to the fact that the drugs found belonged to him and advised him that a 
conviction would carry a minimum fifteen-year sentence.
        Crampton 
stated that Kinnett viewed the plea as a concession of guilt and took the 
position that he was not going to spend a day in jail for something he did not 
do.  Crampton testified that she made it very clear to Kinnett that the 
plea bargain would be off the table if the prosecutor had to do a contested 
motion to revoke.  She testified that Kinnett responded that he wanted to 
go to trial.
        Kinnett’s 
testimony at the hearing on the motion for new trial sharply contrasted 
Crampton’s testimony.  Kinnett stated that Crampton told him she could 
beat each of his cases and “that’s basically the only thing [he] ever heard 
from her.”  He stated that he did not remember ever going over the 
State’s files in any detail with Crampton, she did not explain the range of 
punishment, and she did not tell him about the five-year plea offer from the 
State until after she had already refused to accept it.
        Despite 
his claim that Crampton did not explain the plea bargain, Kinnett testified that 
even before trial he understood that the two drug cases would be dropped or 
dismissed.  Other contradictions that Kinnett made during his testimony 
included stating that he was happy with the outcome of the revocation hearing 
and admitting to writing a letter to Crampton in which he stated that he was 
impressed by her and thought she did her best.  Kinnett further testified 
that he would have accepted the five-year plea if he had known about it, but he 
did not accept the twenty-five year plea that was offered by the State on the 
day of trial.
        The 
only evidence presented to prove that Crampton failed to explain the five-year 
plea bargain to Kinnett was Kinnett’s own uncorroborated, self-serving 
testimony, which the trial court, as fact finder, was not required to 
accept.  See Reissig v. State, 929 S.W.2d 109, 113 (Tex. 
App.—Houston [14th Dist.] 1996, pet. ref’d).  Kinnett’s allegations 
that Crampton’s assistance was not reasonable under all the circumstances and 
prevailing professional norms is not firmly founded in the record.  The 
record does not affirmatively demonstrate the alleged ineffectiveness.  Thompson, 
9 S.W.3d at 814.  The trial court simply chose to disbelieve Kinnett’s 
testimony and to believe Crampton’s testimony.  Consequently, the trial 
court concluded that Kinnett did not carry his burden of proving ineffective 
assistance of counsel.  See, e.g., McKinny v. State, 76 S.W.3d 463, 
474 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  We agree with the 
State that Kinnett has failed to satisfy the first Strickland prong of 
demonstrating Crampton’s assistance was not reasonable under all the 
circumstances and prevailing professional norms at the time of the alleged 
error.  See Thompson, 9 S.W.3d at 814. We overrule Kinnett’s 
fourth issue.
VII. Conclusion
        Having 
overruled each of Kinnett’s four issues, we affirm the trial court’s 
judgment.
  
 
                                                          SUE 
WALKER
                                                          JUSTICE
 
  
PANEL 
B:   HOLMAN, GARDNER, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
July 8, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Lieutenant Cavinder could not specifically recall the female’s relation to 
Kinnett.  He believes that she said that Kinnett was her sister’s 
boyfriend, fiancé, or husband.
3.  
Sergeant Elliott assisted Lieutenant Cavinder; however, Sergeant Elliott did not 
testify at the trial.
4.  
Lewis also testified at Kinnett’s motion for new trial hearing, providing 
substantially the same testimony.
5.  The 
court postponed closing arguments and jury deliberation until the following day 
due to a juror’s need to pick up her child from day care.
6.  
Dasher and Lewis testified to slightly different versions of the phone 
conversation.  However, because it is the juror’s views that may be 
prejudiced, we consider only the juror’s perceptions.  Alba, 905 
S.W.2d at 587.
7.  
The third pending case, involving a state jail felony, was not part of the 
negotiations.
8.  
Because the other cases against Kinnett have been dismissed, any alleged 
deficient performance by failing to assess the risk of stacked sentences cannot 
meet Strickland’s second prong: a showing that the deficient 
performance prejudiced the defense.  466 U.S. at 687, 104 S. Ct. at 2064.